CITY OF WACO, FOR THE USE OF A. OCKANDER, V.
MRS. R. P. CHAMBERLAIN ET AL.

No. 692. Decided October 27, 1898.

1. **City Charter—Powers of Council—Letting Contracts—Bids.**

Where a city council has power to order a contract made without advertisement for bids, the fact that advertisement had been made which was irregular or void would not prevent the council from doing what it could have done in the first place—letting the contract in disregard of what had preceded. (Pp. 212, 214.)

**2. Same—Ordinance.**

A requirement in the ordinances of a city regulating the manner of advertising for and awarding bids for street improvement by the "mayor and proper committee" does not prescribe a rule for the council itself, which may, if permitted by its charter, award contracts without advertisement or bids. (P. 213.)

**3. Same.**

Courts can neither dispense with what the Legislature has commanded to be done in such matters nor require that which the Legislature has not commanded. (P. 214.)

**4. Street Improvement—Ordinance—Description.**

See resolution directing the making of a contract for street improvement, held to sufficiently describe the work to be done as "F Street between the north line of M Ave. and the north line of K Ave." (P. 214.)

**5. Same.**

It was not necessary that such resolution should designate the material to be used where the charter did not require that it do so. (P. 214.)

**6. Street Improvement—Liability of Property Owners—Contract.**

A city in making a contract for street improvement stipulated that the contractor was to look to the city for only one-third of the cost of the improvement, the city's pro rata under its charter, the other two-thirds to be paid by the property-holders, and the contractor subrogated to the city's rights against them. Held, that such contract did not release the owners from liability to the city, and that, having assessed against the property its proportion of the cost, the city could maintain suit for the benefit of the contractor to foreclose the lien therefor against the lots. (Pp. 215, 216.)

ERROR to the Court of Civil Appeals for the Third District, on writ of error to McLennan County.

The city sued Chamberlain et al. for use of Ockander. A judgment for defendant was affirmed by the Court of Civil Appeals, and plaintiff obtained writ of error.

*Clark & Bolinger*, for plaintiff in error.—The conclusions of fact found by the court below show that a lien was fixed upon the property of defendants Chamberlain in strict accordance with the terms of the city charter, and such claim and lien when so fixed became a personal claim and demand against said Chamberlains enforceable in any court of competent jurisdiction. Special Laws of Texas, 1889, p. 155; Special Laws of Texas, 1891, p. 28; Davie's Executor v. City of Galveston, 41 S. W. Rep., 145; Storrie v. Cortes, 38 S. W. Rep., 154; Becker v. City of Henderson, 38 S. W. Rep., 857; City of Muscatine v. Railway, 32 Am. and Eng. Corp. Cas., 258; City of New Haven v. Railway, 38 Conn., 422.

The lien and personal demand so fixed by the city council was assignable at law and in equity to the contractor, and by the terms of the contract and the city charter it ipso facto inured to said contractor as a compensation for his labor. Philadelphia v. Wistar, 35 Pa. St., 427; Sheehan v. Owen, 13 Am. and Eng. Corp. Cas., 284; St. Louis v. Rudolph, 36 Mo., 465; Kansas City v. Rice, 89 Mo., 685; Bambrick v. Campbell, 37 Mo. App., 460; Kearney v. Covington, 1 Metc. (Ky.), 339; Creighton v. Toledo, 18 Ohio St., 447; Morris v. Leona, 67 Texas, 303; Taylor v. Deseve, 81 Texas, 251.

The offer of defendants to pay their proportionate share of the expenses of grading and paving the street in front of their property in accordance with the charter, and its acceptance by the city council, likewise in accordance with the charter, constituted a contract binding upon the defendants Chamberlain and enforceable at law regardless of compliance with the charter. 1 Dillon, 4 ed., sec. 458; Townsend v. Hoyle, 20 Conn., 1; 25 Am. and Eng. Enc. of Law, 567, 568; Tone v. Columbus, 3 Am. and Eng. Corp. Cas., 644; Bish. on Con., secs. 28, 184.

The charter of the city of Waco does not require contracts for street paving to be let to the lowest bidder, but "to the lowest bidder unless the council otherwise order."

*A. C. Prendergast,* for defendants in error.—The conclusions of law and facts as found by the court show that the city authorities of the city of Waco, in grading and paving the street in question, did not comply with the law, and that its attempted act trying to fix a lien upon the property of Mrs. and Miss Chamberlain, and a personal liability against them for the amount sued for, is void and does not bind them or their property. 10 Am. and Eng. Enc. of Law, 283, 284; Elliott on Roads and Streets, 381, 382; Flewellin v. Proetzel, 80 Texas, 195; Kerr v. Corsicana, 35 S. W. Rep., 694; Ardrey v. Dallas, 35 S. W. Rep., 731; Frosh v. Galveston, 73 Texas, 401; Dallas v. Ellison, 30 S. W. Rep., 1134.

BROWN, ASSOCIATE JUSTICE.—The city of Waco, for the use and benefit of A. Ockander, instituted this suit against R. P. Chamberlain and Jessie C. Chamberlain to recover of them the sum of $791.50, their proportionate part of the cost of paving Fourth Street in the city of Waco, between the north line of Marlboro Avenue and the north line of Kentucky Avenue, and to foreclose the lien of the city upon certain property situated on said street and described in the plaintiff's petition. The defendants answered by general denial, and the case was tried before the Judge of the District Court of McLennan County without a jury, who rendered judgment for the defendants, which judgment was affirmed by the Court of Civil Appeals.

The trial judge filed conclusions of fact of which we copy the following as material to the question presented in this court:

"(5.) I find that on March 4, 1894, the following petition was presented to the city council:

" 'Waco, Texas, March 14, 1894.—To the Honorable Mayor and City Council of Waco—Gentlemen: We, the undersigned, would respectfully represent to your honorable body that we are a majority of the resident property owners of land abutting on North Fourth Street, from the north line of Marlboro Avenue to the north line of Kentucky Avenue, and we would respectfully petition your honorable body to grade, pave and otherwise improve said North Fourth Street at point above named, and our consent thereto is hereby given, the city council to be the judges

of the material and manner of work, and we agree to pay our pro rata of the cost, in accordance with the city charter and ordinances governing same. (Signed) R. P. Chamberlain, Jessie C. Chamberlain, A. Ockander.'

"Indorsed on back as follows:

" 'Mrs. Chamberlain et al. Petition to pave North Fourth Street. Filed Mch. 14, '94. We recommend that the within petition be granted, provided that the contractors who do the work will only hold the city responsible for one-third of the cost of the grading and paving of said street, and will look to the abutting property owner for the remainder. (Signed) W. A. Poag, R. H. Harrison, S. E. Watters.

" 'Adopted, J. F. Herbert, Act. Mayor.'

"(6.) That the following action was taken by the city council on said petition: 'June 14, 1894. The petition of Mrs. Chamberlain, asking that North Fourth Street be graded and paved, was referred to street committee.' Minute Book F, p. 577. 'June 21, 1894. The street committee recommended that the petition of R. P. Chamberlain et al., to pave North Fourth Street, be granted, provided that the contractors who do the work will only hold the city responsible for one-third of the cost of the grading and paving of said street, and will look to the abutting property owners for the remainder. The recommendation was adopted, and the mayor instructed to advertise for bids.' Minute Book F, p. 563, of the Records of the City of Waco.

"(7.) 'July 12, 1894. The street committee recommended that the bid of A. Ockander, at thirty-three and three-fourths cents per square yard, for paving North Fourth Street, be accepted. The recommendation was adopted by the following vote: Ayes—Poag, Tibbs, Lacey, Gillespie, Woodward, Watters, O'Brien, and Deaton.' Minute Book F, p. 598, Records of the City of Waco.

"(8.) 'Sept. 6, 1894, Ald. Lacey offered the following resolution: "Be it resolved by the city council of the city of Waco, that, whereas, a majority of the resident owners of property abutting on North Fourth Street, from the north line of Marlboro Avenue to the north line of Kentucky Avenue, have by petition requested and consented to the grading and paving and improving of said portion of said street, such improvement is deemed by the city council to be to the public interest and benefit, said petition is now here accordingly granted; and, the mayor having been authorized to advertise for bids for such work, and the bid of A. Ockander being the lowest and best bid, and irrespective of such bid, said Ockander shall be awarded the contract; and, having been accepted by the city council, said Ockander is now here awarded the contract for said improvement,—the work to be done in accordance with said bid and the specifications for said work, and the mayor is ordered to enter into written contract with said Ockander for such work, in accordance herewith. It is expressly stipulated and understood that the said Ockander is to look to the city for only one-third of the cost of said improvement, the city's pro rata under the charter; that the amount

of contractor's bond shall be five hundred dollars." The resolution was adopted by the following vote: Ayes—Tibbs, Lacey, Woodward, Harrison, Watters, O'Brien, Deaton, Herbert.     No—Gillespie.'     Minute Book F, p. 636, Records of the City of Waco.

"(9.)     That the mayor entered into the following contract with said Ockander to do said work." The contract copied by the court recites the steps taken by the property owners and the council up to the making of the contract and concludes as follows:

"And the city of Waco, party of the first part, agrees and binds itself, upon the completion of said work in accordance with the terms thereof and upon the acceptance of the same by the city council of the city of Waco, to pay to said Ockander therefor the sum of thirty-three and three-fourths cents per square yard for street intersections, and the sum of thirty-three and three-fourths cents per square yard for all the square yards of street so constructed and accepted on balance of street on said points above named. The other two-thirds of the cost of said work to be paid by the property holders to said Ockander, who is subrogated to all the rights the city might have against said property holders, provided it paid contractor for the work. Witness our hands, and the seal of the city, this September 7, 1894. The City of Waco, by C. C. McCulloch, Mayor.     A. Ockander."

"(10.)     That Ockander did the work according to contract, and that thereafter the following report was made to the city council."

The estimate of the engineer set out in the conclusions of the court, showed the whole cost of the work to be $1314, and the portion to be paid by R. P. and Jessie Chamberlain, $791.50.

"(12.)     I find that on July 18, 1895, the city council passed an ordinance levying special taxes on the several lots and parcels of land in said city fronting or abutting on either side of that part of the street so paved, for the purpose of paying for two-thirds of the cost of paving and improving said part of said street, in which it levied and assessed $37.50 against J. I. Naman for 75 feet fronting thereon, and against A. Ockander $37.50 for 75 feet fronting thereon, and against Mrs. R. P. Chamberlain and Jessie C. Chamberlain $360.66 for 721½ feet fronting on one side thereof, and the sum of $433.25 for 866½ feet fronting on the other side thereof, and declaring the said special taxes so levied and assessed to be a legal claim and demand against the owners of said lots and parcels of land, and a lien on said lots and land, and due and payable on the first day of August, which ordinance was duly registered in county clerk's office of McLennan County, as required by the charter of the city of Waco.

"(13.)     I find that defendants Chamberlain owned all the land fronting on both sides of said street (1731 feet) except 75 feet owned by plaintiff, Ockander, and 75 feet owned by Naman.

"(14.)     I find that plaintiff, Ockander, had no contract with defendants Chamberlain for paving said street, and that defendants never agreed to pay Ockander anything therefor, nor consented that he should

pave said street and look to them for payment for two-thirds, or any part, of the cost of such paving."

The Judge of the District Court before whom this case was tried filed his conclusions of law in which he gave his reasons for entering judgment for the defendants, which conclusions of law were approved and adopted by the Court of Civil Appeals. The judgment entered by the District Court is based upon the conclusion that the city council did not comply with the provisions of the charter of the city of Waco so as to create a liability on the part of the defendants nor to fix a lien upon their property for the cost of paving the street in front of it. It is also held that from the ordinances and contract in evidence it appears that the city did not intend to create any liability to it on the part of the defendants, and that they had entered into no contract with Ockander, and therefore there was no cause of action shown against them. If the city had no claim against the defendants on account of the work done, then this suit can not be maintained, for the reason that if they became directly liable to the contractor, the city has no cause of action either in its own behalf or for the use of the contractor. It is therefore unnecessary for us to discuss the question of direct liability on the part of the defendants to Ockander.

It is not contended that the contractor failed in any manner to comply with the terms of his contract nor that the city failed to comply with the law so as to fix a lien upon the property, if defendants were liable for the assessment made. The question presented for our consideration is, did the city pursue the requirements of its charter with such substantial accuracy as to render the defendants liable for the assessment made by the city, and if so, the judgment of the District Court was erroneously entered; atherwise, it must be affirmed. The provisions of the charter of the city of Waco which bear upon the question presented are as follows:

"Sec. 21.    That the city council shall have exclusive control and power over the streets, alleys, and public grounds and highways of the city, and to abate and remove encroachments or obstructions thereto." * * * "The city council shall be invested with full power and authority, upon the consent of a majority of the resident owners on both sides of any street, avenue or highway, or such portion thereof as may be proposed to be improved, to grade, pave, repair, or otherwise improve any avenue, street, alley, or other highway or any portion thereof within the limits of said city whenever by a vote of two-thirds of the aldermen elected they may deem such improvement for the public interest, two-thirds of the cost of which grading, paving, or repairing shall be done at the cost and charge of the owners of the lot or lots, or block fronting upon the alley, avenue, street, or other highway so improved; and to make provision for the payment of the two-thirds of the cost and expenses of such improvements and the cost of collecting the same, the city council shall have full power to assess, levy, and collect a tax upon the lot or lots or block or blocks fronting on said alley, avenue, street,

or other highway, which tax, when so levied and assessed, shall be a valid charge against the owner or owners of such lot or lots or block or blocks as well as a lien and incumbrance upon the property itself, which amount may be collected and the said lien enforced in any court of competent jurisdiction; provided, that the city alone shall pay for the improving of the intersections of the streets from block to block across the street either way." Special Laws 1889, p. 155.

Section 21a of the charter to be found in the Special Laws of 1891, on page 28, requires, that upon the completion of the work of grading, etc., and the acceptance of such work by the city, the city council shall by ordinance assess against each lot or parcel of land fronting on the street and against the owners of such lots their proper share of the expense of such improvements, which shall constitute a legal claim and demand against the owner or owners, and that a copy of such ordinance, duly certified by the city secretary under the seal of the city, may be filed for record in the office of the county clerk of McLennan County, accompanied with the description of the lots sought to be charged and the amount assessed against each lot, which ordinance shall be recorded in the registry book of mortgages of lands, and shall from that date constitute a lien upon such lots, which lien may be enforced in any court of competent jurisdiction. This requirement was complied with and no question arises under its provision.

In the conclusions of fact filed by the District Judge, we find the following: "All contracts for work to be done on any street, alley, bridge, or other public places of the city, amounting to over $250, shall be let to the lowest and best bidder, unless the council otherwise order; and when work to such an amount is to be done, the mayor shall advertise for a reasonable time in some daily newspaper of the city for proposals to do the same, which proposals, when received, shall be opened and examined by the mayor and proper committee, which shall award the contract to the lowest and best bidder, reserving the right to reject any and all bids." We do not find this provision embraced in the charter of the city of Waco, and presume that it is an ordinance or a part of an ordinance of the city.

The charter of the city of Waco does not require that advertisement shall be made and bids received in letting contracts for the improvement of the streets of the city, but leaves such details to the city council. The ordinance copied does not prescribe a rule by which the city council shall make such contracts, but was intended to and by its terms does apply alone to the action of "the mayor and the proper committee" when the council had made no order to the contrary, and the former should be charged with the duty of contracting for that class of work. If, however, the ordinance be given the force and effect of a provision of the charter, the city council by its terms might have ordered the contract to be made without advertisement for bids, and having this power over the subject the council could disregard whatever had preceded and make the contract in such manner as it might deem proper. The fact that

an advertisement had been made, which was either irregular or void, would not prevent the council from doing what it could have done in the first place. Brown v. Christie, 27 Texas, 73; Nolan County v. State, 83 Texas, 182; Flewellin v. Proetzel, 80 Texas, 196.

In the case of Flewellin v. Proetzel, cited above, Judge Gaines, speaking for the court, said: "The successive steps directed to be taken preliminary to ordering the work to be done, the manner of letting the contract, and the mode of constructing the improvements, when provided for in the law, are intended for the protection of the property owner, and are his safeguards against the exercise of arbitrary power. Each act required to be done is essential to the exercise of the jurisdiction, and each act must be rigidly performed. The courts can not say that the omission of some requirement is unimportant, or that an act different from that directed is substantially as good." Whatever the Legislature has commanded to be done by the city council in such matters can not be dispensed with by the courts; neither can the courts require the corporation to do that which the Legislature has not commanded. It matters not whether the proceedings of the council prior to the passage of the resolution of September 6, 1894, be valid or not; if the council had begun with that resolution the assessment upon the property would be valid. This court has never held that every act of a city council must be expressed by ordinance or resolution, and we do not intend to intimate that the proceedings prior to the resolution of September 6th were irregular or invalid; but they are unimportant.

It is urged on behalf of the defendants and held by the trial court that the resolution of September 6, 1894, is void, because it does not sufficiently describe the work to be done and the material to be used. The resolution describes the place where the paving was to be done as "Fourth Street between the north line of Marlboro Avenue and the north line of Kentucky Avenue," which is sufficiently certain to give notice to all of the property owners on each side of that street within those limits that the council had determined to pave the street in front of their property. The charter does not require that the council in determining upon such work shall specify in the resolution the material to be used in the pavement or other improvement on the streets. If the charter had so specified, it would be necessary for the council to follow that direction strictly in order to bind the property owners, but the Legislature having failed to make any such provision, the courts can not engraft it upon the charter and thus destroy the rights of the contractor because the council has not done that which the law did not command. The Legislature saw fit, in enacting the charter of that city, to direct that after the work was completed an ordinance should be passed giving the particulars as to the amount assessed upon each property owner and upon each parcel of land fronting upon the said street, and whether it be good or bad policy to have this description made and filed in the clerk's office after, instead of before, the completion of the work, it is nevertheless the law made by the law-making power of the

State and furnishes the rule by which the courts must be governed. The resolution was a substantial compliance with the charter, and constituted a valid basis for the subsequent proceedings.

It is strenuously urged by the defendants in error and held by the trial court in its conclusions of law that no liability ever arose on the part of the defendants, R. P. and Jessie Chamberlain, to the city of Waco for the work done upon the street. The proceedings of the council had the effect to create personal liability to the city as well as a lien upon the abutting property, if not prevented by the following language embodied in the resolution of September 6, 1894: "And the bid of A. Ockander, being the lowest and best bid, and irrespective of such bid said Ockander shall be awarded the contract; and, having been accepted by the city council, said Ockander is now here awarded the contract for said improvement. It is expressly stipulated and understood that the said Ockander is to look to the city for only one-third of the cost of said improvement, the city's pro rata under the charter." The contract entered into between the mayor and the contractor contains the following language: "The other two-thirds of the cost of said work to be paid by the property holders to said Ockander." In using the language, "irrespective of such bid, said Ockander shall be awarded the contract," we think that the council intended to exercise its power of awarding the contract without regard to the bid, but it did, at the same time, accept the bid as it was presented through the committee; this course would avoid any trouble that might arise from any supposed irregularities in the manner of presenting the bid to the council. This language had no reference whatever to the liability of the property owners. In providing that the contractor should look to the property owners for his pay for two-thirds of the work done, we are of the opinion that it was intended by the council to express that the contractor should take in satisfaction of his claim for the work whatever the city might be able to collect from the owners of the property and of the property itself as a precaution against liability if the claim could not be collected of the property owners nor enforced against the lots. If this was not the intent, and the property owners were to make their contracts with Ockander and to account to him directly, why should the city have passed the ordinance by which two-thirds of the cost of the improvement was assessed against the property owners and the abutting property? That ordinance expressly declared the assessments to be claims against the owners and liens upon the property. The city had no authority to assess taxes and fix a lien to secure a contract made or to be made between Ockander and the property owners. The action of the city was just such as the law required if the cost was to be collected by the city and paid to the contractor, and must be given its legal effect.

We conclude that the proceedings created a liability in favor of the city against each of the property owners and a lien upon the property abutting upon the street within the limits described, and also that the city of Waco could maintain this suit for the use and benefit of the con-

tractor, Ockander. The District Court erred in entering judgment for the defendants upon the facts as found by it and the Court of Civil Appeals erred in affirming that judgment. It is therefore ordered, that the judgments of the said District Court and of the Court of Civil Appeals be reversed, and that this court now proceed to render such judgment as the District Court should have rendered. It is ordered that the city of Waco, for the use of A. Ockander, have and recover of the defendants, R. P. Chamberlain and Jessie Chamberlain, the sum of $793.91, with interest at 6 per cent per annum from the 18th day of July, 1895, and that the lien for the said sum be foreclosed upon the several lots of ground as shown in the ordinance adopted by the said city attached to plaintiff's petition, and it is further ordered that the clerk of the District Court issue upon the judgment of this court an order of sale in accordance with law.

*Reversed and rendered.*