### City of Paris v. Mrs. H. L. Brenneman.

#### Decided March 3, 1910.

**1.—Street Improvements—Assessment of Benefits.**

The special charter of the city of Paris, the ordinances passed thereunder prescribing the method of procedure for paving streets and assessing the benefits of the improvements against owners of lots thereon, and resolutions and proceedings of the city council for such assessment considered and held to show proceedings in accordance with such charter and ordinances.

**2.—Same—Amendment of Resolution.**

A resolution providing for the paving of a portion of a street, which complied with all requirements of the charter and ordinances of the city in regard to the method of doing such work and assessing the benefits against lot owners, having been amended by a resolution adding other parts of the street to the portion to be paved this was a sufficient adoption, as to the added part, of the procedure provided by the original resolution.

**3.—Same—Engineer's Report.**

The ordinances requiring an engineer's report to the council of the cost of improvements and property and owners to be benefited, with estimate of benefits, and the resolution for paving a certain part of a street requiring the making of such report, an amendment to the ordinance added a further portion of the street to the part to be paved under such resolution and a report of the engineer giving the cost, specifications, ownership, and estimated benefits, as to this added portion was made to the council. The requirement that this was to be ordered and made was complied with as to such portion added by the amendment, the failure to order the report before it was made being a harmless irregularity.

**4.—Street Paving—Assessment of Benefits—Constitutional Law.**

A city charter giving authority to pave streets and assess the cost against lots and lot owners as far as the property is benefited by the improvement, giving such owners the right to be heard thereon before the council but making its determination final, is not unconstitutional as a taking of property without due process of law (Const. U. S. Fourteenth Amendment); nor because jury trial was denied (Const. of Texas, art. 1, sec. 15), the assessment being a tax which was not required to be imposed by a jury; nor under the requirement that private property shall not be taken for public use without

compensation (Const. of Texas, art. 1, sec. 17); nor because such procedure departs from the due course of the law of the land (Const. of Texas, art. 1, sec. 19); nor as infringing the requirement that the courts shall be open for redress of injuries (Const. of Texas, art. 1, sec. 15); nor the requirement that all taxes shall be equal and uniform (Const. of Texas, art. 8, sec. 1) this having no reference to assessment of benefits.

Appeal from the County Court of Lamar County. Tried below before Hon. Leslie Hardison.

*Edgar Wright,* for appellant.—The procedure did not transgress the Fourteenth Amendment. 28 Cyc., 1103; Norwood v. Baker, 172 U. S., 269; Hutcheson v. Storrie, 92 Texas, 685; French v. Barber Asphalt Co., 181 U. S., 323; Detroit v. Parker, 181 U. S., 399; Schaefer v. Werling, 188 U. S., 515; Cass Farm Co. v. Detroit, 181 U. S., 396; Hibben v. Smith, 191 U. S., 310.

They are not in violation of sections 15, 17 and 19 of the Constitution of Texas. 24 Cyc., 133; City of Austin v. Nalle, 102 Texas, 536; Norris v. Waco, 57 Texas, 635; Buffalo Bayou Ry. Co. v. Ferris, 26 Texas, 588; Werner v. City of Galveston, 72 Texas, 22; Davidson v. New Orleans, 96 U. S., 97; Roundtree v. Galveston, 42 Texas, 626; Taylor v. Boyd, 63 Texas, 533; Allen v. Galveston, 51 Texas, 302.

It is not necessary to comply with the provisions of a general improvement ordinance of a municipality, the said provisions not being expressly named in the charter or constitution as conditions precedent to the exercise of the power; but all were complied with. Ex parte Mayor and City of Albany, 23 Wend., 277; People ex rel. Brownell v. Board of Assessors, 109 N. Y. Supp., 991; City of Jackson v. Williams, 46 So., 551; Hardwick v. City of Independence, 114 N. W., 14; City of Springfield v. Weaver, 37 S. W., 509; City of Galveston v. Heard, 54 Texas, 439; Bordages v. Higgins, 20 S. W., 184; Hutcheson v. Storrie, 92 Texas, 685; City of Waco v. Chamberlain, 92 Texas, 207.

*W. F. Moore, Moore & Park* and *Burdette & Connor,* for appellee. —On effect of the amended resolution: Frosh v. City of Galveston, 73 Texas, 401; Ardrey v. City of Dallas, 13 Texas Civ. App., 442; Alford v. City of Dallas, 35 S. W., 817; Wood v. City of Galveston, 76 Texas, 126; City of Waco v. Prather, 35 S. W., 958; City of Waco v. Prather, 90 Texas, 80; 28 Cyc., 985, 992 and 1196; City of El Paso v. Mundy, 85 Texas, 316.

On constitutionality of charter and ordinance, Constitution of U. S., 14th Amendment, art. 1; Const. of Texas, art. 1, secs. 15, 17, 19, art. 8, sec. 1; Norwood v. Baker, 172 U. S., 269; Hutcheson v. Storrie, 92 Texas, 685; City of Dallas v. Myers, 55 S. W., 742; Rhine v. McKinney, 53 Texas, 359; Higgins v. Bordages, 88 Texas, 458.

LEVY, ASSOCIATE JUSTICE.—The action was brought by appellant to recover the amount assessed personally against appellee as her proportionate part of the cost of paving a portion of South Main Street in front of and abutting the premises owned by appellee. A general

demurrer was sustained to the petition. The charter of the city specially confers the power upon the city council to make the improvements in suit, when in its judgment it is in the interest of the public to do so, and to assess so much of the cost as may be deemed just and proper against the property specially benefited thereby, and against the owner personally; provided, that the cost or part of the cost specially assessed against any property or property owner shall not exceed the amount of the special benefit in enhanced value which said property shall receive from such improvements. The charter further provides: "The city council shall have full power, by ordinance or resolution, to prescribe such methods of procedure and such general or special rules and regulations as may be deemed just and proper to fully execute and enforce the purposes of provisions of sections 135 to 148 of this Act." In pursuance of this last section the city council properly passed the following ordinance:

"Be it ordained by the city council of the city of Paris:

"Section 1. Whenever the city council deems it to the interest of the city that any street, alley or other public grounds of the city or any portion of either, be paved or repaved and a proportion of the cost of the proposed paving or repaving be assessed against the abutting property and the owners thereof, it shall pass a resolution to that effect, which resolution shall designate the street, alley or other public grounds of the city, or the particular portion of either desired to be paved or repaved, and the general character and nature of the pavement, and direct the city engineer to submit a written report to the council at its next regular meeting or special meeting of the estimated cost of the proposed improvement, accompanied by complete plans and specifications for said improvement and a list of the names of all persons, corporations or associations owning property abutting on said street, alley or public grounds, or portion of either desired to be paved or repaved, and opposite each name on the list the respective dimensions of the property owned by each person, corporation or association, and also the estimated cost of the proposed improvement in front of each piece of abutting property in proportion to its frontage on said street, alley or public grounds to be improved.

"Section 2. It shall be the duty of the city engineer to prepare the report called for in the preceding section and file the same at the next session of the council held after the passage of the resolution ordering the report. Upon the receipt of the report of the city engineer, it shall be referred to a committee of the council, who shall consider the same and report to the council at its next session, stating therein such changes in the manner of constructing said proposed improvement and in the material to be used in same as said committee may deem necessary. Thereupon the council may adopt or reject the report of said committee, and, if said report is adopted, so amend the original resolution, plans and specifications for said proposed improvement as may be necessary. If the original resolution is not amended, or if it is amended in accordance with the report of the committee, and the council is still desirous of making said proposed improvement, it shall instruct the city secretary to cause notice to be published in the official paper of the city of Paris for ten successive days, which

notice shall state that a resolution was introduced and was passed by the city council on the .... day of ......, 190...., ordering the city engineer to prepare plans and specifications for the paving or repaving of the street, alley or other public grounds, or portion of either desired to be improved; the general nature and character of the improvements contemplated, the total cost of the same, as estimated by the city engineer, the name of each owner of property abutting on said street, and refer to the plans and specifications on file to ascertain the dimensions of his property and the estimated cost to him of said proposed improvement, which is to be one-third (1/3) of the costs of the improvement in front of his property; the said notice shall also state the estimated total cost to the city of making said improvement, and notify the owners of the property abutting on said proposed improvements to appear before the city council at .... o'clock on the .... day of ......, 190...., to present objections to said proposed improvement and to introduce testimony to show that the estimated cost of the improvement in front of their property exceeds the benefit to the property, and such other objections as they may have to the making of said improvement, and any and all claims for exemption that said parties may claim by reason of the property being the homestead, or otherwise.

"Section 3. The council shall consider the objections filed and hear testimony in support of and against same at such times as it may designate, after giving notice of the time and place of hearing, to the party filing same. The decision of the council shall be final, and there shall be no appeal from same. Any owner of property abutting on the proposed improvement failing to present and file his objections and claims of exemption at the time and in the manner provided in this ordinance shall be estopped from raising such objections or claiming the exemption. If, after hearing the testimony in support of any objections filed, the council shall be of the opinion that the estimated cost of the proposed improvement exceeds the benefit to the property, it shall fix the amount to be charged against said property at a sum equal to the benefit to the property, and thereafter assess said amount against same.

"Section 4. If after due consideration of all of the objections filed, as provided in preceding sections, the city council is still of the opinion that said improvement shall be made, it shall direct the mayor to advertise for bids for the construction of said proposed improvement in accordance with the plans and specifications prepared by the city engineer, and upon the receipt of a satisfactory bid the council shall pass an ordinance ordering the construction of said proposed improvements and assessing against the owners of the abutting property their respective proportions of the cost of same, and providing the manner and terms of the payment of said assessments and the collection of same, and also appropriating the amount necessary to pay the proportion of the cost of said proposed improvement due by the city out of the funds available for that purpose."

On the 8th day of January, 1906, the city council passed the following resolutions:

"Whereas, the city council of the city of Paris deems it to the in-

terest of the city that that portion of South Main Street between the south side of the public square and the north side of Sherman Street be paved with vitrified brick on a six (6)-inch concrete foundation, and that the owners of the property abutting on said portion of said street pay one-third of the cost of the proposed paving in front of their premises and the street railway be required to pay the cost of paving between its rails and one foot on each side thereof; and whereas, said property will be, in the opinion of the city council, specially benefited to the extent of the cost of the proposed paving in front of it; now. therefore, be it resolved by the city council of the city of Paris:

"Section 1.    That the said council deems it to the interest of the city that that portion of South Main Street between the south side of the public square and the north side of Sherman Street be paved with vitrified brick on a six (6)-inch concrete foundation, and that one-third of the costs of the proposed paving be assessed against the property abutting on each side of said street, and that the cost of paving between the rails of the street railway company and one foot on each side be assessed against said street railway company, and that one-third of the entire cost of said paving be paid by the city, less the portion to be paid by the street railway company.

"Section 2.    That the city engineer is hereby directed and instructed to submit a written report to the city council at its next regular or special meeting of the estimated cost of the proposed improvements, and also a list of the names of all persons, corporations or associations owning property abutting on said portion of South Main Street, and to place opposite each name on said list the respective dimensions of the property owned by each person, corporation or association, and also the estimated cost of the proposed improvement in front of each piece of abutting property in proportion to its frontage on South Main Street."

On the 20th of January, 1906, the council passed the following resolution:

"Whereas, on the 20th day of January, 1906, the city council passed a resolution authorizing and directing the city engineer to prepare estimates, plans and specifications, etc., for the proposed paving of South Main Street between the south boundary line of Clarksville Street and the north boundary line of Sherman Street; and whereas, the said city council is now desirous of also paving that portion of said street between the north boundary line of Sherman Street and the north boundary line of Washington Street, and estimates as to cost of same having been submitted by the city engineer; now, therefore, be it resolved by the city council of the city of Paris: That the resolution passed by the city council on the 20th day of January, 1906, be and the same is hereby amended so that wherever it now appears in said resolution describing the particular portion of street to be paved to be the portion of same between the south boundary line of Clarksville Street and the north boundary line of Sherman Street, the same be changed so as to hereafter read that portion of South Main Street between the south boundary line of Clarksville Street and the north boundary line of Washington Street."    At a special

meeting of the council on January 29, 1906, the following resolution was passed:

"Whereas, on the 8th day of January, 1906, the city council of the city of Paris passed a resolution requiring that portion of South Main Street between the south boundary line of the public square and the north boundary line of Sherman Street to be paved with vitrified brick on a six-inch concrete foundation, and instructed the city engineer to submit plans and specifications, list of property owners and estimated cost of improvement; and whereas, on the 29th day of January, 1906, said resolution was amended so as to include that portion of South Main Street between the south boundary line of the public square and the north boundary line of Washington Street; and whereas, the engineer submitted an amended list of property owners, and a new estimate of the cost, and notice of the proposed improvement having been given to the property owners on said street by publishing a notice for ten days in the Paris Daily Advocate; and whereas, all of the objections filed by said property owners and such evidence as they desired to present, was duly heard by the city council on the 26th day of February and on the 5th day of March, 1906, and all objections were by said city council overruled and disallowed on the 12th day of March, 1906; and whereas, the said city council is still of the opinion that the proposed improvement should be made; now, therefore, be it resolved by the city council of the city of Paris:

"Section 1. That the mayor is hereby authorized and instructed to advertise for bids for the construction of the proposed improvement on South Main Street between the south boundary line of the public square and the north boundary line of Washington Street, the said bids to be made on the plans and specifications heretofore prepared by the city engineer."

Afterwards, on the 9th day of July, 1906, an ordinance was duly passed ordering the particular improvements and levying the proper assessments against abutting property owners and providing when the assessments shall be due, and the mode and manner of collecting. As this ordinance is not involved, it is not more particularly stated.

*After stating the case.*—We assume the court sustained the demurrer upon the grounds presented in the briefs. All the provisions of the charter defining the mode in which the right to levy the assessment as against the owner is to be acquired had been, we think, complied with in the record, and the levy of the assessment was not void. A resolution was passed declaring the purpose to make the street improvement as a benefit to the public, and describing the particular portion of the street to be improved, and the nature and character of the pavement, and adopting complete plans and specifications for same with the estimated cost of the improvement, and providing and giving the required notice to abutting property owners to be heard before assessments were levied and finally determined upon, and after the time of notice and hearing the public advertisement for bids, and the letting of the contract to the lowest bidder, and the determination of the proportionate cost to be borne by each property owner as his property was enhanced in value and according to the frontage on the improvement. All the steps provided for and intended for the pro-

tection of the property owner, and his safeguard against the exercise of arbitrary power by the council directed by the charter to be taken as a preliminary to ordering the work done, it is seen, were taken by the city council. This being true, the power to make the levy existed, and it was lawful. It is urged, though, that the levy of the assessment must be held void because the resolutions passed by the city council on January 20th and 29th failed to comply with the methods of procedure prescribed by section one of the general improvement ordinance. The failure, it is claimed, consists in not directing the engineer to make out a report containing a list of the dimensions of each piece of property and the names of the owners thereof abutting on such portion of said street, and accompany the same with complete plans and specifications at the next meeting of the council. The face of the original resolution of January 8th specifically directed this very procedure, and the other two resolutions mentioned were merely amendatory of and an enlargement of the original, and so declared in the face of the amendatory resolutions. All the original procedure in the original resolution continued to become a part of the amended resolutions, and unnecessary to be further stated in words. The amendatory resolutions were in their nature purely amendatory, and not a distinctive and independent proceeding. The jurisdiction of the council attached over the original and by authority of that jurisdiction the power to amend and add thereto existed and continued. The authority to extend the territory of improvement beyond that provided in the original resolution by amending the original to that effect existed as in the first instance. If the authority existed, as it did, to the city council by resolution, as it did, to amend the original resolution by enlarging the portion of the street to be improved, then we are unable to perceive how the fact, if so, of the council not waiting "until the next regular or special meeting" to receive data of estimated cost, and the names of property owners, and the dimensions of each piece of property on the proposed improvement, would render void the assessment. The engineer's report was called forth in the original resolution, and he was there in obedience to such call, and if the council was convinced that he had the full and complete data necessary for the extended territory then at hand, and used such information then instead of at the "next meeting," it would be a mere harmless irregularity at most. Such literal procedure was not prescribed by the charter as an essential and condition precedent to the levy of the assessment. Neither would such a fact invade any safeguard of the rights of the property owner. The substance of the requirement is that the information be obtained from the engineer's report, and this the resolutions recite on their face, and, in fact, was done. See Flewellin v. Proetzel, 80 Texas, 191, 15 S. W., 1043; City of Galveston v. Heard, 54 Texas, 420; City of Waco v. Chamberlain, 92 Texas, 207, 45 S. W., 527. The cases cited of Wood v. City of Galveston, 76 Texas, 126, 13 S. W., 227, and Frosh v. City of Galveston, 73 Texas, 409, 11 S. W., 402, present different proceedings on the facts from the instant one.

The assessment is attacked as void because the section of the city charter authorizing the assessment is unconstitutional. The particu-

lar section, No. 138, of the charter provides: "Subject to the provisions of sections 135 to 148 of this Act, the city council shall have the power to provide for and order the construction or reconstruction of any street improvement, or any two or more of such improvements, on any street or streets, alley or alleys, in the city of Paris; and to assess the cost of such improvement or improvements, or so much of the cost as may be deemed just and proper, against the property specially benefited thereby, and against the owners of such property personally; provided, that the cost or part of the cost specially assessed against any property or property owner shall not exceed the amount of the special benefit in enhanced value which such property shall receive from such improvements." Section 147 provides: "The city council shall have full power, by ordinance or resolution, to prescribe such methods of procedure and such general or special rules and regulations as may be deemed just and proper to fully execute and enforce the purposes and provisions of sections 135 to 148 of this Act; and the city council shall have the power to inquire into and determine all matters of fact necessary for any and all proceedings under said sections of this Act; and the findings and conclusions of the city council shall be conclusive." The ordinance levying the particular assessment, among other things, provides: "That all the property abutting on the proposed improvement will be benefited to the extent of the cost to the property owner of the proposed improvement in proportion to its frontage on said street, and that for the purpose of paying the property owner's proportion of the cost of the improvement there is hereby levied and assessed against each respective owner of abutting property, and against the property itself in proportion to its frontage on said street, one-third of the amount necessary to pay the cost of constructing the improvement in front of each respective piece of property; that is to say, there is hereby levied and assessed against Mrs. H. L. Brenneman the sum of $448, which shall be a personal charge against the said Mrs. H. L. Brenneman, and on failure or refusal to pay, the same may be collected by suit in any court of competent jurisdiction." There are several reasons urged as to the unconstitutionality of the proceeding authorized by the charter. It is insisted that by the terms of the charter the city council are constituted the only tribunal to hear and determine the question of fact and inquiry as to whether the property abutting on the improvement is to be "specially benefited thereby," and their determination of the amount to be assessed against the abutting owner is made conclusive without appeal, and because thereof, it is claimed, it is in contravention of the Fourteenth Amendment of the Constitution of the United States, which provides: "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The questions raised have been fully decided and need no elaboration here. The instant charter and improvement ordinance provide for a full and fair hearing on all matters affecting the property and claim for liability against the person. In this respect it makes the case clearly distinguishable from Hutchison v. Storrie, 92 Texas, 685, 51 S. W., 848, and Norwood v. Baker, 172 U. S., 269. The charter provides in

section 144: "Any person interested in any property which may be claimed to be subject to assessment under this Act shall be entitled to a full and fair hearing before the city council on all matters affecting such property or any claim of personal liability." The improvement ordinance, it is seen by reference thereto, makes provision for notice to appear and present objections to the proposed improvement, the cost and benefit to their property, and other objections. See French v. Barber Asphalt Co., 181 U. S., 323; Detroit v. Parker, 181 U. S., 399; Cass Farm Co. v. Detroit, 181 U. S., 396; Schaefer v. Werling, 188 U. S., 515; Hibben v. Smith, 191 U. S., 309.

It is claimed that the sections of the charter are violative of sections 15, 17 and 19 of article 1 of the Constitution of the State. As assessments for public improvements are regarded as a species of taxation, property owners are not entitled to have the assessment made by a jury. 24 Cyc., p. 133. The assessment of property for cost of improvement is a tax. City of Austin v. Nalle, 102 Texas, 536, 120 S. W., 996. Section 17 does not apply here. Norris v. City of Waco, 57 Texas, 635. Nor do the provisions of the charter contravene section 13 of article 1 of the Constitution. It can not be said that the taking of property under the taxing power is not a taking under due process of law. Werner v. City of Galveston, 72 Texas, 22, 12 S. W., 157; Davidson v. City of New Orleans, 96 U. S., 97. It is well settled that the provisions of section 1, article 8, that taxation shall be equal and uniform do not apply to special assessments. Roundtree v. Galveston, 42 Texas, 626; Taylor v. Boyd, 63 Texas, 533; Allen v. City of Galveston, 51 Texas, 302. There was error, we think, in not overruling the general demurrer, and the case was ordered reversed and remanded.

*Reversed and remanded.*