**EVANS v. WHICKER et al.**

No. 3988.

Court of Civil Appeals of Texas. Amarillo.

April 5, 1933.

Rehearing Denied April 26, 1933.

White, Taylor & Gardner, of Austin, for appellant.

Robt. A. Sowder, of Lubbock, and E. A. Bills and T. Wade Potter, both of Littlefield, for appellees.

HALL, Chief Justice.

The appellant, Mrs. Evans, a feme sole, as assignee of Dozier Construction Company, brought this suit against J. C. Whicker and the Lubbock National Bank to recover the amount due upon five paving certificates which had been issued by the city of Littlefield to the construction company to cover the pro rata cost of paving in front of five lots of land in said city and further to foreclose the assessment lien upon the real estate.

The first paving certificate is dated December 21, 1928, and certifies that by virtue of an ordinance and other proceedings of the city of Littlefield, passed and had on the 14th day of July, 1928, an assessment was levied in the sum of $206.40 against certain property mentioned therein and against the true owner thereof, who it is recited is J. C. Whicker. The other four certificates dated January 4, 1929, each certify that by virtue of an ordinance and other proceedings passed and had on the 7th of September, 1928, there was levied an assessment in the sum of $137.48 against the property described therein and against the true owner, who is stated to be J. C. Whicker. Each certificate contains this recital: "That all proceedings with reference to making such improvements have been regularly had in compliance with the law, the charter of said city and the terms of this certificate and that all prerequisites to the fixing of the lien and claim of personal liability evidenced by this certificate have been performed."

Plaintiff further alleged that the city of Littlefield was authorized to order the improvements of its streets and to assess a part of the cost against abutting property and the owners thereof under article 1105b, Vernon's Annotated Civil Statutes. That the issuance by said city of said certificates under the law and the order for the improvements, the completion of the contract by the construction company, and the acceptance of the work by the city, together with the assignment of the five installments of said certificates to plaintiff, gave her a lien on the property from April 10, 1928, the date said improvements were ordered, and fixed the personal liability of Whicker from said date. That the assessment evidenced by said certificates constituted special taxes upon said property. That the Lubbock National Bank was claiming some character of interest in said property, but that whatever its nature may be, same was inferior to plaintiff's liens. The prayer is for judgment against Whicker for the amount of her certificates, principal, interest, attorney's fees, and costs, and for foreclosure of her liens as against both defendants.

Whicker answered, pleading his discharge in bankruptcy.

The Lubbock National Bank answered, pleading the bankruptcy of Whicker; that the bankruptcy court had appointed a trustee for Whicker's estate; that by virtue of a deed from said trustee purporting to convey to it the real estate involved, free and clear of all liens and incumbrances, save and except taxes, it held title to said property free of plaintiff's alleged liens thereon. The bank also attacked the sufficiency of the certificates held by plaintiff upon the ground that no assessment ordinance was ever passed by the city, that no levy was ever made against the property, that no testimony was heard at the hearing, and that the assessments were made on the front-foot plan and void. The bank prayed that the cloud on its title to said real estate cast by said certificates be removed.

By her first supplemental petition plaintiff alleged that the assessments made by the city, were taxes and denied that the bankruptcy court had attempted or intended to cut off plaintiff's prior, valid liens on the property, and if such was the real intention of the bankruptcy court, such action was void as to plaintiff's liens, because she was not a party to the bankruptcy proceedings, had no notice of the proposed sale or of the time and place thereof, and she further alleged that the defendants or those under whom they claimed did not, within fifteen days from the time of the levy of said assessment, appeal therefrom to a court having jurisdiction as provided by law.

It appears that the city of Littlefield is a city of about 3,000 inhabitants and as such was authorized to improve its streets under the Acts of 1927 (1st Called Sess.) c. 106, Vernon's Ann. Civ. St. art. 1105b, and to levy the assessments involved in this action. On August 2, 1928, when Whicker filed his petition in bankruptcy, he listed all of the lots here involved as assets of his estate, but did not schedule any debt due to Dozier Construction Company or appellant, Nella T. Evans. On August 14th thereafter Elkins was appointed trustee in bankruptcy of said estate and the next day made application for the sale of the property involved herein "at public sale, for cash, to the highest bidder," listing the Lubbock National Bank and others as lien claimants, but making no reference whatever to the Dozier Construction Company or Mrs. Evans, and praying "that notice by registered mail be sent to each of the above

alleged lien claimants and that they and each of them be required to file their claim before this Court on a day to be fixed by the Court and show cause if any they have why an order should not be made to sell said property free and clear of all liens, interest and encumbrances and in default of answer to said claimant, that an order be entered by the Court debarring said claimants and each of them from hereafter asserting any right, interest or claim in and to the property hereinabove described." On August 30th thereafter, the referee ordered the property involved herein, together with other property, "sold free and clear of all liens, save and except taxes * * * at public or private sale for cash to the highest bidder, the said trustee to keep an accurate account of the property sold, the price received therefor, and to whom sold, which account he shall file with the referee within ten days from this date."

On June 23, 1931, the claim of the Lubbock National Bank was approved as a secured claim on the property involved "subject to liens." On July 20th thereafter the trustee reported to the referee that on said date he had sold certain property, including the lots here involved, pursuant to the order of sale made the 30th day of August, 1928, to the defendant Lubbock National Bank, "for the sum of $1775.55 cash, to be credited upon the secured claim of the Lubbock National Bank," and that said property was "sold free from all liens and encumbrances save and except taxes," and that "it is understood that the purchaser takes property subject to all taxes due or to become due thereon to the various taxing powers." On the same day the referee confirmed the sale by an order which recites, "said property being sold free from all liens and encumbrances, save and except taxes, it being understood that the purchaser takes property subject to all taxes due or to become due thereon to the various taxing powers," and on the same day the trustee executed his deed conveying said property to said Bank "free from all liens and encumbrances, save and except taxes due and to become due thereon to the various taxing powers."

The case was tried to the court without a jury, resulting in a judgment that Mrs. Evans take nothing against either of the defendants and that the cloud cast by the assessments be removed from the title of the Lubbock National Bank to the property involved.

The appellee contends that because, under the decisions of this state, a claim for street paving arising under the statutes of this state, article 1105b, has been held not to be a tax within the meaning of the Constitution, art. 16, § 50, that the bank, in purchasing the property from the trustee, is not liable for the several amounts assessed against the lots by the city.

In determining this question we are governed by the decisions of the Supreme Court of the United States, especially when that court construes the various provisions of the Bankruptcy Act, 11 USCA; Edrington v. Gee (Tex. Civ. App.) 30 S.W.(2d) 360; 11 Tex. Jur. 855, § 106. While the Texas courts hold that special assessments, such as those involved in this proceeding, are not "taxes" within the meaning of the Texas Constitution, nevertheless, a federal question is presented, arising under the Bankruptcy Act, and we must be governed by the holding of the Supreme Court of the United States upon that issue. That court, in New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 140, 51 L. Ed. 284, has held otherwise. In that case, the amount due as an annual license fee or franchise tax was involved. The court said: "The bankruptcy act is a Federal statute, the ultimate interpretation of which is in the Federal courts * * * still a state court, while entitled to great consideration, cannot conclusively decide that to be a tax within the meaning of a Federal law providing for the payment of taxes, which is not so in fact. The section (64a) [11 USCA § 104 (a)] itself declares that, in case of disputes as to the amount or legality of any such tax, they shall be heard and determined by the court. The state court may construe a statute and define its meaning, but whether its construction creates a tax within the meaning of a Federal statute, giving a preference to taxes, is a Federal question, of ultimate decision in this court. We are of opinion that this claim was for a tax. The language of the act, as we have said, is very broad, and includes all taxes."

The section of the Bankruptcy Act just mentioned provides: "Debts which have priority. (a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment, he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

See, also, Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; In re Lange Co. (D. C.) 159 F. 586; In re F. G. Borden Co. (C. C. A.) 275 F. 782; Remington on Bankruptcy, § 2800; McDowell v. City of Barberton (C. C. A.) 38 F.(2d) 786.

The case of In re Gerry (D. C.) 112 F. 958, seems to be decisive of the rights of the parties herein, without regard to the construction placed by the Supreme Court of the United States upon the Bankruptcy Act. In that case certain real estate belonging to the bankrupt, upon which there were mortgage liens,

ground rents, municipal claims, and taxes unpaid, was sold under an order by the referee which specified that the purchaser should take the property "under and subject to the incumbrances, respectively, hereinbefore mentioned." The purchaser had to pay some of the liens for municipal claims and was insisting that the bankrupt's estate should reimburse him. The trustee's petition asking for an order of sale recited, in part, "that there are also unpaid taxes and water rents for a year or more on said properties and that some of the above mentioned properties are further subject to municipal claims." The referee ordered the sale to be made under and subject to the incumbrances mentioned. The trustee's deed contained the same recital. The court held that the word " 'incumbrances' * * * includes a lien for a municipal claim or for a tax. * * * If, therefore, as I think, the purchaser agreed to take the land subject to all the liens, he should be held to his contract. Section 64 of the bankrupt act [section 104, 11 USCA], making it the duty of the trustee to pay all taxes legally due and owing by the bankrupt, did not prevent the purchaser, as between himself and the trustee, from taking this duty upon his own shoulders. Neither, in view of his agreement to pay the liens, is he in any position to insist that the liens were discharged by the sale,. and could have been claimed by the lienholders out of the fund." In re Reading Hat Mfg. Co. (D. C.) 224 F. 786.

■■■ If it be admitted that the claims involved in this action were not to be preferred under the Bankruptcy Act, in view of the decisions of this state construing paving liens not to be taxes within the Constitution, nevertheless, we are convinced that when the bank purchased the property from the trustee under a deed which recites that it took the lots free from all liens and incumbrances "save and except taxes due and to become due thereon to the various taxing powers," under the Gerry Case and the well-recognized rule of waiver of rights it must be held to have taken the lots incumbered by the paving liens asserted by the appellant. It is fundamental law that statutory provisions designed solely for the benefit of individuals may be waived by the persons for whose benefit they are designed. · 6 R. C. L. 707, § 113.

■■As said in 27 R. C. L. 906, § 3: "The doctrine of waiver, from its nature, is applicable generally speaking, to all rights or privileges to which a' person is legally entitled, whether such rights or privileges rest in the individual and are intended for his sole benefit. A right or privilege given by statute may be waived or surrendered, in whole or in part, by the party to whom or for whose benefit it is given, if he does not thereby destroy the rights and benefits conferred upon

or flowing to another in or from said statute or other legal or equitable source."

The record fails to show that the bank made any protest in the federal court to the order of the referee directing the trustee to sell the property subject to taxes and should now be estopped from denying its liability under the express terms of the trustee's deed. We think it is clear that the bank has waived any rights it may have had. Fidelity & Deposit Company of Maryland v. Pence (Tex. Civ. App.) 272 S. W. 234; 17 Tex. Jur. 135, § 7.

■■ When incumbered property is sold by the trustee subject to liens, the lienor may enforce his lien by appropriate proceedings. First Trust'Co. v. Baylor (C. C. A.)·1 F.(2d) 24, 27; In re North Star Ice & Coal Co. (D. C.) 252 F. 301, 303.

The appellee insists that the trial court's judgment is correct for the further reason that the duty rests upon the governing body of the city to have a hearing and to actually receive evidence as to the proposed cost and enhanced value of the property by reason of the proposed improvement, and that if no such evidence is received, the ordinance is void, and may be collaterally attacked.

■■ The ordinance enacted on the 7th day of September, 1928, signed by the mayor and attested by the city secretary, recites that no one appeared to protest or object at the hearing and orders that the hearing be closed and the assessments made as therein ordained. W. G. Street, city secretary, testified with reference to the passage of this ordinance that no person was sworn at any meeting to give any evidence nor did any person ever testify that the paving would enhance the value of the property. It seems that the court sustained the objection to Street's testimony, but later found in accordance with the witness's statement. In any event, the recital in the ordinance is sufficient.

Pierson, Justice, in Anderson v. Brandon (Tex. Sup.) 47 S.W.(2d) 261, 262, said: "In order that said liens may be valid, it is, of course, necessary that a proper hearing as to benefits be given the owners of property. * * * Plaintiffs in error also contend that the fixing of the lien at a date prior to the hearing of the assessment for benefits results in the taking of their property without due process of law, in .contravention of both the State and Federal Constitutions. We think this does not follow, as no lien can be fixed or become effective at all until it has been determined at a proper hearing that the property of plaintiffs in error has been benefited at. least to the extent of the amount of the proposed assessment."

■■ The. fact that there was no hearing will. require a reversal of the judgment.

■ By several propositions the bank attacks the sufficiency of the city's ordinances and the certificates upon which the suit is based. The general rule is that improvement ordinances shall prescribe the number and amount of payments to be made for the improvements and the time of each payment. 5 McQuillin, Municipal Corporations (2d Ed.) §§ 2012, 2036. Another requirement is that the property assessed should be so described that it may be readily identified and located. Id., § 2017. It is held in City of Waco v. Chamberlain, 92 Tex. 207, 47 S. W. 527, that the property described as "F Street between north line of M Street and the north of K Avenue" was sufficient.

■ The property in the ordinances is described substantially as follows: "On Fourth Street from its intersection with the East property line of Farwell Avenue to its intersection with the east property line of X I T Drive designated as District No. 2 in paving contract of May 3, 1923."

■ The descriptions in the other certificates are equally specific and we think comply with the requirements of the statute. Neither the order for the improvements nor the ordinances making the assessment need necessarily declare that there is a necessity or public necessity for the proposed improvements. City of Ranger v. Southern Ice & Utilities Co. (Tex. Civ. App.) 262 S. W. 839; Connor v. City of Paris, 87 Tex. 32, 27 S. W. 88.

■ The proceedings of the council show that an estimate was prepared prior to the time fixed for the hearing. One estimate may be made against several parcels when they are owned by the same party, firm, or corporation. The certificates introduced in evidence specify the particular lot or lots, giving the front-foot measurement of each upon which such assessment has been made, and apportions the cost among the several parcels. This we think is a sufficient compliance with the terms of the statute. The city engineer's estimate of the cost of each division was never introduced in evidence. The record shows that he made an estimate. Whether sufficient or not does not appear and that as to each street or district it had been detached from the ordinance before the latter was introduced in evidence. There is therefore no sufficient showing that an estimate as required by law had ever been prepared before the time fixed for the hearing.

The bank challenges the sufficiency of the several certificates because they do not show that the several lots abutted upon the improvements.

The recital of the certificates is practically the same in each certificate. Certificate No. 210 recites: "There was levied an assessment in the sum of One Hundred Thirty-Seven and 48/100 Dollars, against property situated in said City, fronting 25 feet on the East side of X. I. T. Drive Street, and being Lot or Lots No. W. 45' of 15 in Block No. 30," etc.

■ The statement that the property fronted 25 feet on the east side of the street is sufficient to show that the lot abutted upon the street and that the street and property were adjacent one to the other.

For the reasons stated, the judgment is reversed, and the cause remanded.