CITY OF DALLAS et al. v. ATKINS et al. (No. 7672.)

(Court of Civil Appeals of Texas. Dallas. June 23, 1917. Rehearing Denied Oct. 6, 1917.)

1. MUNICIPAL CORPORATIONS ⬥437 — PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—AMOUNT.

A special assessment for a local improvement must not exceed the amount of benefits conferred upon the property sought to be charged with such assessment and accruing to the owners of the property.

2. EMINENT DOMAIN ⬥2(11)—DISTINCTION BETWEEN EMINENT DOMAIN AND TAXING POWER—"TAXES."

"Eminent domain" is the sovereign power vested in the state to take private property for public use, providing first a just compensation therefor, while "taxes" are burdens or charges imposed by the legislative power of a state upon persons or property to raise money for public purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Eminent Domain; Tax.]

3. EMINENT DOMAIN ⬥71, 167(2)—MUNICIPAL CORPORATIONS ⬥407(1)—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS.

The Dallas city charter provides that the board of commissioners shall have power to appropriate private property for opening or widening streets by making just compensation; that if such compensation shall not be agreed upon, the judge of the county court of Dallas county at law shall appoint three special commissioners to assess the damages from the condemnation; that in case of condemnation of land for widening any street, the board of commissioners may provide that the cost of the property shall be paid for by the owners of property in the immediate vicinity and benefited thereby; that in such case, the city engineer shall, under the direction of the special commissioners, make a plat of the property which, in the judgment of the special commissioners, will be specially benefited, whereupon the special commissioners shall issue a notice to the property owners to appear and show cause why the property should not be assessed; that the commissioners shall determine the value of the property to be taken and the portion of the cost to be assessed against the owner of each lot or subdivision specially benefited, and report to the board of commissioners; and that the board of commissioners shall consider the report, and, if approved, levy a special tax which shall be a lien on the property assessed. Held, that the charter does not allow the taking of private property for public use without adequate compensation; nor wrongfully or il-

legally permit the compensation to .be absorbed in whole or in part by offsetting a portion of the cost of acquiring the property; nor authorize the taking of the property without a hearing or trial before a legally constituted tribunal; nor wrongfully provide for imposing on property owners the total cost of the property condemned—without requiring that the assessment imposed upon any particular property shall not exceed the peculiar benefits to that property.

**4. EMINENT DOMAIN ⊂⇒167(2)—MUNICIPAL CORPORATIONS ⊂⇒407(1)—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS.**

The provisions of the Dallas city charter authorizing the appointment by the judge of the county court at law of special commissioners to determine the damages to the owners of land condemned for street improvements, and to fix the assessments to be levied against property to defray the expense of the improvement, are constitutional, and are an authorized departure from the statute prescribing the procedure for the condemnation of property by railroads which the charter provides shall control "unless otherwise provided herein."

**5. MUNICIPAL CORPORATIONS ⊂⇒864(4)—TAXES—LIMITATION—SPECIAL ASSESSMENTS.**

An assessment of benefits for a street improvement is not invalid because property will thereby be subjected to a tax in excess of the constitutional limit, since the constitutional provisions having a reference to taxes for general revenue are not applicable to assessments for local improvements.

**6. MUNICIPAL CORPORATIONS ⊂⇒447—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—CONDITIONS PRECEDENT.**

A city may levy special assessments for a public improvement before the compensation to be paid for private property to be taken or damaged is ascertained.

**7. EMINENT DOMAIN ⊂⇒167(2)—JURY ⊂⇒19 (10, 11)—MUNICIPAL CORPORATIONS ⊂⇒407 (1)—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS.**

The provisions of the Dallas city charter for the condemnation of property for street improvements and the levy of assessments to pay the cost of acquiring the property by special commissioners, appointed for that purpose, subject to approval by the board of commissioners of the city, are not unconstitutional or invalid, because the determination of the amount of damages and the amount of the assessment is made conclusive without an appeal or a trial by jury.

**8. MUNICIPAL CORPORATIONS ⊂⇒434(5)—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—EXEMPTIONS.**

The Constitution exempts homesteads from forced sale for the payment of assessments for local city improvements, and such an assessment against the homestead is void.

**9. MUNICIPAL CORPORATIONS ⊂⇒586—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—PERSONAL LIABILITY.**

A personal liability cannot be imposed against a married woman for an assessment of benefits for a street improvement on the homestead owned in her separate property right.

**10. EMINENT DOMAIN ⊂⇒274(1)—ENJOINING TAKING OF PROPERTY—GROUNDS.**

As the Dallas city charter providing for the appointment of special commissioners by the judge of the county court at law to determine the compensation to be awarded for property taken for a public improvement, if the amount of the compensation shall not be agreed upon, confers no authority on the county judge or the special commissioners to determine whether any effort was made by the city to agree with

the property owner, a property owner may invoke the equitable jurisdiction of the district court for the purpose of having a determination of this question.

**11. EMINENT DOMAIN ⊂⇒293(4)—ENJOINING TAKING OF PROPERTY—ISSUES AND PROOF.**

In a property owner's suit to enjoin the taking of property by the city of Dallas for a public improvement on the ground that no effort was made by the city to agree on the amount of compensation as required by the city charter, it is not enough to allege and prove that the city and the property owners have not agreed on the compensation, but, when the point is raised, it must be alleged and proved that an effort was made to secure such an agreement, though if it appears that it would have been impossible to agree, the court, in the exercise of its equitable powers, may be authorized to hold that the failure to make such effort is immaterial.

**12. MUNICIPAL CORPORATIONS ⊂⇒442 — PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—AGREEMENTS WITH CITY.**

An assessment of benefits for the cost of widening a street was invalid as to property owners with whom the city agreed to make no assessment in consideration of their donation of the land needed for the improvement, where, on the hearing before the special commissioners, it was agreed between the property owner, the special commissioners, and the city attorney that such agreement should be respected and carried out, and by reason thereof the property owners offered no evidence as to the value of the lands sought to be taken from them.

**13. MUNICIPAL CORPORATIONS ⊂⇒480—PUBLIC IMPROVEMENTS—ASSESSMENT OF BENEFITS—SEVERANCE AS TO OWNERS.**

An assessment of benefits for a public improvement in lump sums against the whole of each piece of property, without separating the interest of life tenants from the interest of the owners in fee, or the interest of one joint owner from that of another joint owner, is improper.

**14. MUNICIPAL CORPORATIONS ⊂⇒586—PUBLIC IMPROVEMENTS — ASSESSMENT OF BENEFITS—PERSONAL LIABILITY.**

The Dallas city charter does not authorize the imposing of personal liability upon owners of property upon which assessments for public improvements are levied, and, without such authority in the charter, such personal liability cannot be imposed.

**15. APPEAL AND ERROR ⊂⇒954(1)—REVIEW—DISCRETION OF COURT — GRANTING TEMPORARY INJUNCTION.**

Where the showing made in support of an application for a temporary injunction against further proceedings under a street improvement ordinance was such that the granting of the injunction rested largely in the trial court's discretion, the judgment will not be reversed in the absence of an abuse of discretion merely because the material allegations of the petition were denied under oath.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by George T. Atkins and others against the City of Dallas and others. From a judgment granting a temporary injunction, defendants appeal. Affirmed.

O. F. O'Donnell and Lee Richardson, both of Dallas, for appellants. Flippen, Gresham & Freeman, W. C. Kimbrough, W. L. Crawford, Read & Lawrance, S. A. Charlton, Burgess, Burgess, Chrestman & Brundidge, J.

Hart Willis, and Thompson, Knight, Baker & Harris, all of Dallas, for appellees.

TALBOT, J. This suit, in which B. M. Burgher and others intervened, was brought by George T. Atkins and others to restrain the city of Dallas and certain of its officials from enforcing ordinances passed, by which said city, in the exercise of the power of eminent domain, ordered condemnation proceedings to be instituted for the purpose of enabling it to widen and straighten a public street in said city, known as Masten street, and that the cost thereof be assessed against the property in the immediate vicinity of said street and specially benefited by such improvement. The petition of the appellees was duly sworn to and prayed for a temporary injunction, and that upon final trial appellants be perpetually enjoined from enforcing the ordinances in question. Upon the filing of appellees' petition appellants were notified to appear before the Hon. E. B. Muse, judge of the Forty-Fourth district court of Dallas county, and show cause why the temporary injunction prayed for should not be granted. In compliance with the notice served upon them the appellants appeared and filed their answer under oath in which they interposed a general demurrer and various special demurrers to the appellees' petition. They also admitted as true some of the allegations in appellees' petition, but specifically denied others. Upon the date set for the hearing, the court, upon the sworn petition and exhibits thereto and sworn answer of appellants, no oral testimony having been introduced, granted the temporary injunction prayed for by appellees, and the appellants appealed.

From the pleadings upon which the case was submitted the following, among other things, appears: On September 8, 1913, an ordinance was passed by the board of commissioners of the city of Dallas and duly approved October 2, 1913, ordering the condemnation of land belonging to the appellees for the purpose of opening and widening a public street in said city known as Masten street, and providing that the cost of such property when taken and appropriated for such purpose shall be paid for by the property owners owning property in the immediate vicinity of said street and benefited by its improvement. The city of Dallas then filed petitions in the county court of Dallas county at law, Dallas county, Tex., praying for the appointment of special commissioners for the purpose of determining the value of the land sought to be condemned for the widening of said street and assessing the damages to accrue to said owners, if any, and for the purpose of determining the amount to be paid by the respective owners owning property in the immediate vicinity thereof and benefited thereby, by reason of the opening, widening, and extending of said street. In compliance with said petition the judge of the county court on October 24, 1913, appointed William J. Cavin, Henry Lewis, and Lee Hughes, such special commissioners, each of whom took an oath that he would "assess the damage fairly and impartially and in accordance with law." Notice was duly issued by the special commissioners to, and served upon, all owners and persons having an interest in the land sought to be taken for the purpose mentioned and all persons owning or having an interest in all land sought to be assessed for special benefits occasioned by said improvements, to be and appear before said commissioners on the 19th day of October, 1914, in the council chamber in the Municipal building of the city of Dallas to show cause, if any, why such owners of property and their property should not be assessed to pay the cost of opening and widening said Masten street, and to show whether or not said property is located in the immediate vicinity of such proposed improvement, and will be specially benefited and enhanced in value by reason of the making of said improvement, and a hearing was given by said special commissioners to said property owners to appear and show the amount of compensation they should receive as damages for the condemnation of the property, and make protest and to be heard on any objection that they might desire to urge against any proceeding proposed to be taken and especially to any assessment to be levied against them, or concerning any matter relating to the question of whether or not their property was specially benefited and enhanced in value by reason of the making of said improvement, and concerning whether their said property was situated in the immediate vicinity thereof. On April 21, 1915, the special commissioners filed with the board of commissioners of the city of Dallas its report, which was approved and adopted by the said board of commissioners on April 26, 1915, and the city attorney was directed to draw an ordinance levying a special assessment against the property shown by the said report to be specially benefited and enhanced in value by such public improvement. On April 28, 1915, the board of commissioners of the city of Dallas duly and legally passed "an ordinance levying a special tax and fixing a lien upon the property lying in the immediate vicinity of the land owned by the hereinafter named persons, to be appropriated and taken for the purpose of opening, widening, and straightening Masten street, in accordance with the report of the special commissioners appointed to condemn the said land and assess the benefits against the property lying in the immediate vicinity thereof, and fixing the time such tax shall become due and delinquent for such collection thereof." On April 30, 1915, appellees filed this suit, setting up that the condemnation proceedings which had been instituted by the city of Dallas for the purpose of opening and widening Masten street were invalid, for the

reason that the charter of the city of Dallas authorizing such proceedings, and the ordinances thereunder, and all proceedings with reference thereto, were void and of no effect, because the provisions of said charter under which appellants were proceeding, and the ordinances passed thereunder,' were in contravention of the Constitution of the state of Texas and the Constitution of the United States, and for various other reasons, some, if not all, of which will appear in the course of this opinion.

The manifest purpose of the city in the proceedings complained of by the appellees was not only the condemnation of private property for street purposes in the exercise of its right of eminent domain, but also to assess the cost of acquiring the property desired to be taken through condemnation proceedings upon the property owners from whom taken. Such authority as the city of Dallas has to do this is found in section 5, art. 11, of its charter, the material portions of which are as follows:

"The board of commissioners shall have the power of appropriating private property for public purposes whenever the board of commissioners of said city shall deem it necessary to take any private property in order to change or widen any public street. Such property may be taken for such purposes by making just compensation to the owner thereof. If the amount of such compensation shall not be agreed upon, it shall be the duty of the board of commissioners to cause to be stated in writing the real estate or property sought to be taken, the name of the owner thereof, and his residence, if known, to the parties by whom said property is sought to be taken, and file such statement with the judge of the county court of Dallas county, at law, or the judgment of the court having jurisdiction by law, to act in condemnation proceedings for railroad rights of way.

"Upon the filing of such statement, it shall be the duty of such judge to appoint three disinterested freeholders and qualified voters of the county of Dallas as special commissioners to assess the damages to accrue to the owners by reason of such condemnation. The special commissioners so appointed shall in their proceedings be governed and controlled by the state laws in force in reference to the condemnation of right of way for railroad companies and the assessment of damages therefor, the city of Dallas occupying the position of the railroad company, and all laws in reference to the application for the condemnation of right of way of railroad companies, including the measure of damages, the right of appeal, and the like, shall apply to an application to the city of Dallas under this charter for condemnation of property for the aforesaid purposes, unless otherwise provided herein, the city of Dallas to occupy the position of the railroad company.

"In estimating the damages to such property the jury shall not only estimate the value of the land so taken, but they shall also estimate the damages done to the remainder of any land from which it is taken by reason of such taking, but shall provide, however, that in case of condemnation of land for widening any street, the board of commissioners may by ordinance provide that the cost of such property shall be paid for by the property owners owning property in the immediate vicinity thereof and benefited thereby.

"In such cases the city engineer shall, under the direction of the special commissioners appointed, make a plat of the property which, in the judgment of such special commissioners, will be specially benefited and enhanced in value by the making of such improvements, whereupon such special commissioners shall issue notice to the owners of such property to appear before them at a time and place to be designated in such notices, to show cause, if any they have, why such property should not be assessed to pay the cost of the property so condemned. Such notice shall be given five full days before the final determination by the special commissioners of the amount of assessment against the owner of such property for such improvement. Said special commissioners shall determine the value of the property desired to be taken belonging to the different owners thereof, if there be more than one such owner, and, if there be only one, such owner, the value of same, and shall also find how much of the cost thereof shall be assessed against the owner of each lot or subdivision of the land in the immediate vicinity thereof specially benefited and enhanced in value by the making of such improvements, and shall report all such matters to the board of commissioners of the city of Dallas. Such apportionment shall be made according to the benefits that will, in the judgment of the special commissioners, be received by or accrued to such lot or subdivision of property by reason of the making of such improvements herein.

"The board of commissioners shall, as soon as practicable, after the filing of such report, consider the same; and if the same be approved by a majority of the votes of the members present at the meeting at which it considers the same, the same shall be final and binding upon the city and all parties at interest therein.

"If the board of commissioners shall approve such report, it shall levy a special tax against the property shown by said report to be benefited and enhanced in value by such improvements, according to the recommendation made in such report. Such tax shall be a lien on the property against which the same shall be assessed, from the date of such levy, and shall become due and delinquent at the time provided in the ordinance levying the same. If the same shall not be paid as provided in such ordinance, said assessor and collector of taxes shall proceed to collect the same as provided in the ordinance, levying the same by the advertisement and sale as provided in the city charter in case of the sale of such property for delinquent ad valorem taxes."

The district court, as shown by the judgment entered, overruled appellants' general and special demurrers, and held that the appellees were entitled to the "temporary injunction prayed for by reason of the allegations set forth and contained in their petition, and for the further reason that the ordinances and charter of the city of Dallas referred to, set forth, and described in the pleadings in this case are in contravention of the Constitution of the state of Texas and of the United States and are null and void." By numerous assignments of error, presented in groups, the appellants challenge the correctness of the trial court's rulings and earnestly insist that the judgment of that court should be reversed and the temporary injunction dissolved. On the other hand, the appellees with equal earnestness insist that, for the reasons stated by them, the judgment of the district court should be affirmed. Without stating the assignments of error, we shall consider what we conceive to be the material propositions contended for by appellants and the principal propositions urged by

the appellees. In their petition for the injunction granted them, and, in substance, in their brief filed in this court, the appellees assert that the proceedings authorized by the charter of the city of Dallas for widening and straightening streets in said city, as well as the procedure followed by said city for widening and straightening Masten street, are in violation of the Constitutions of the state of Texas and United States, first, because the provisions of said charter provide for and allow the taking of private property for public use without adequate compensation therefor, and such proceedings do not constitute due process of law as contemplated by said Constitutions; second, because they attempt to fasten a lien upon the property of the appellees and deprive them of it without giving them a hearing or trial before any court or body that could in law be recognized as a court or trial by jury; third, because said city charter wrongfully provides that the compensation due to owners of private property taken for public use may be absorbed in whole or in part by offsetting against it a portion or all of the cost of acquiring such property, as well as the cost of acquiring other property; fourth, because said charter wrongfully provides for imposing upon property owners, by way of assessments for supposed local benefits, the total cost of all property condemned for street widening purposes, without requiring that the assessment imposed upon any particular property shall not exceed the peculiar and special actual benefits to that property, and that the proceedings taken by the city of Dallas will operate to impose upon particular private properties burdens in excess of such peculiar and special benefits to result to such property by the widening of Masten street, and will impose upon properties on Masten street assessments for benefits going to the community at large as distinguished from those peculiar and individual to such properties; fifth, because said charter imposes upon the special or assessment commissioners the power, not to hear and determine benefits, but only to report to the board of commissioners of the city of Dallas, and it makes no provision requiring the said board of commissioners to give notice to owners of property, nor to afford them a hearing. Other reasons are urged by appellees in support of the district court's action in granting the temporary injunction, which will be stated and considered later on in this opinion. The appellants combat the foregoing contentions of the appellees and assert that private property may be condemned and taken under the provisions of the statutes of this state and the charter of the city of Dallas, under the power of eminent domain, for opening, widening, extending, or straightening a public street upon payment to the owner of said property of reasonable compensation for the value of said property taken, or for the damages thereto;

and the funds for the payment for the taking or damaging of said property may be procured by the levying of a special assessment against the property in the immediate vicinity of such local improvement when such property is specially benefited thereby; that the Legislature has authority, under the Constitution, to authorize municipal corporations to determine the necessity, nature, and character of local public improvements within the corporate limits, and the determination by such municipal corporation that such necessity exists is conclusive and cannot be reviewed on appeal; that the Legislature likewise has authority to authorize the appointment, by any legally constituted court, or a board of special commissioners in a condemnation proceeding, and to confer upon such special commissioners authority to determine the property upon which a special assessment may be levied, and the amount of such special assessment upon property in the immediate vicinity of a local improvement, when such commissioners shall determine that the property against which such special assessment is to be levied is specially benefited thereby, and such determination so made is not subject to review on appeal, and is not invalid because no provision was made for a determination of such question by a jury.

Some, if not all, of the questions raised in the foregoing contentions have been carefully considered both in decisions of the state and federal courts. The liability of lots fronting on a street, the paving of which was authorized to be charged with cost of the work according to their frontage, has been repeatedly asserted in decisions of the Supreme Court of Missouri. In French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, such holding by the Supreme Court of Missouri was upheld and the rule announced that:

"The apportionment of the entire cost of street paving upon the abutting lots according to their frontage (even) without any preliminary hearing as to benefits, may be authorized by the Legislature, and such action will not constitute a taking of property without due process of law."

This case cites and reviews many cases to sustain the principles of law therein enunciated. Among them is the case of Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, in which a judgment of the Court of Appeals of the state of New York, upholding the validity of an assessment upon lands to cover the expense of a local improvement, was carried to the Supreme Court of the United States for review, upon the allegation that the statute relied upon for the validity of the assessment and authority for the judgment was unconstitutional. The Supreme Court quotes apparently with approval the following observations of the New York Court of Appeals:

"The act of 1881 determines absolutely and conclusively the amount of tax to be raised, and the property to be assessed, and upon which

it was to be apportioned. Each of these things was within the power of the Legislature, whose action cannot be reviewed in the courts upon the ground that it acted unjustly or without appropriate and adequate reason. * * * The Legislature may commit the ascertainment of the sum to be raised and of the benefited district to commissioners, but it is not bound to do so, and may settle both questions for itself; and when it does so, its action is necessarily conclusive and beyond review. * * * The question of special benefit and the property to which it extends is of necessity a question of fact, and when the Legislature determines it in a case within its general power, its decision must of course be final. We can see in the determination reached possible sources of error, and perhaps even of injustice, but we are not at liberty to say that the tax on the property covered by the law of 1881 was imposed without reference to special benefits. * * * The precise wrong of which the complaint is made appears to be that the land owners now assessed never had opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the Legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation."

The definition of legislative power by the Court of Appeals of New York was approved by the Supreme Court of the United States, and the latter court said:

"In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the Legislature of the state having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either like other taxes upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax and the class of lands which will receive the benefit and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners. When the determination of the lands to be benefited is intrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited, and how much," etc.

The case of Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270, is also cited and reviewed in French v. Barber Asphalt Pav. Co., supra. That case went to the Supreme Court of the United States on appeal from the court of appeals of the District of Columbia, and, as pointed out by the Supreme Court, the court of appeals held, that Congress may direct that, when part of a parcel of land is appropriated to the public use for a highway in the District of Columbia, the tribunal vested by law with the duty of assessing the compensation or damages due to the owner, whether for the value of the part taken or for any injury to the rest, shall take into consideration, by way of lessening the whole or any part of the sum due him, any special and direct benefits, capable of present estimate and reasonable computation, caused by the establishment of the highway to the part not taken; that the esti-

mate of the just compensation for property taken for the public use, under the right of eminent domain, is not required to be made by a jury, but may be intrusted to commissioners appointed by a court, or to an inquest consisting of more or fewer men than an ordinary jury; that Congress, in the exercise of the right of taxation in the District of Columbia, may direct that half of the amount of the compensation or damages awarded to the owners of lands appropriated to the public use for a highway shall be assessed and charged upon the District of Columbia, and the other held upon the lands benefited thereby within the district, in proportion to the benefit, and may commit the ascertainment of the lands to be assessed, and the apportionment of the benefits among them, to the same tribunal which assesses the compensation or damages; that if the Legislature, in taxing lands benefited by a highway or other public improvement, makes provision for notice, by publication or otherwise, to each owner of land, and for hearing him, at some stage of the proceedings, upon the question of what proportion of the tax shall be assessed upon his land, his property is not taken without due process of law. In the opinion of the court in that case, delivered by Mr. Justice Gray, it was said that the provisions of the statute under consideration, which regulated the assessment of damages, are to be referred, not to the right of eminent domain, but to the right of taxation; and that the Legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading, or the repair of a street, to be assessed upon the owners of lands benefited thereby; and that such authority has been repeatedly exercised in the District of Columbia by Congress, with the sanction of this court—citing Willard v. Presbury, 14 Wall. 676, 20 L. Ed. 719; Mattingly v. District of Columbia, 97 U. S. 687, 24 L. Ed. 1098; Shoemaker v. United States, 147 U. S. 282, 302, 13 Sup. Ct. 361, 37 L. Ed. 170, 186. It was also said that the class of lands to be assessed for the purpose may be either determined by the Legislature itself, by defining a territorial district, or by other designation, or it may be left by the Legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefited; that the rule of apportionment among the parcels of land benefited also rests within the discretion of the Legislature, and may be directed to be in proportion to the position, the frontage, the area, or the market value of the lands, or in proportion to the benefits as estimated by commissioners.

In Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. 521, 42 L. Ed. 943, the subject was considered by the Supreme Court.

of the United States, and it was held, after a review of the authorities, that the enactment by Congress that assessments levied for laying water mains in the District of Columbia should be at the rate of $1.25 per linear foot front against all lots or land abutting on the street in which a water main shall be laid was constitutional, and was conclusive alike of the necessity of the work and of its benefits as against abutting property. In the case at bar the amount of the tax to be rais'ed, nor the property to be assessed and upon which it is to be apportioned, is determined and fixed directly by the Legislature. Here, the determination of the lands to be taken, the lands to be benefited by the contemplated improvement, and the amount of such benefits, if any, is intrusted, as hereinbefore shown, to special commissioners, appointed by the county judge, as provided for in the charter of the city of Dallas. The case in its facts is measurably similar to the case of Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884. That case overruled Adams v. Fisher, 75 Tex. 657, 6 S. W. 772, and follows Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, decided prior to the case of French v. Barber Asphalt Pav. Co., supra. The rule announced in Adams v. Fisher, supra, was to the effect that while assessments of the character here in question, "as distinguished from general taxation, rest upon the basis of benefits or presumable benefits to the property assessed, it is not essential to their validity that an actual enhancement in value or other benefit to the owner be shown. The passage of the ordinance by the city council, under the power granted in the charter, is conclusive of the propriety of the improvement and of the question of benefit to the owners of abutting property." Judge Brown, writing the opinion in Hutcheson v. Storrie, supra, said that the rule announced in Adams v. Fisher had been completely overturned and all precedents establishing it set aside, and held, in accordance with the rule stated in Norwood v. Baker, that the Legislature of a state cannot authorize a municipal corporation to assess upon abutting property the cost of a public improvement in a sum materially exceeding the special benefits which that property may derive from the work, and cannot confer upon such a corporation the authority to make such assessment conclusive upon the owner, without giving an opportunity to contest the question of benefits. The Supreme Court of the United States in Norwood v. Baker held that, because the assessment in that case was made under a law that did not afford property owners the opportunity to be heard nor empower the city authorities to consider the question of benefits, the assessment in that case was a nullity. The principle, as indicated in Norwood v. Baker, and Hutcheson v. Storrie, underlying special assessments to meet the cost of

public improvement, is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement.

[1] It is, therefore, well-established law that, in a proceeding to levy a special assessment for local improvements, such assessment must not exceed the amount of benefits conferred upon the property sought to be charged with such assessment and accruing to the owners of the property upon which such assessment is made. The distinction between condemnation under the power of eminent domain and the exercise of the taxing power by way of special assessments for local improvements is plainly drawn by the authorities.

[2] In City of Austin v. Nalle, 102 Tex. 536, 120 S. W. 996, it is said: "Eminent domain is defined to be 'the sovereign power vested in the state to take private property for a public use, providing first a just compensation therefor.'" Taxes are defined to be burdens or charges imposed by the legislative power of a state upon persons or property to raise money for public purposes. The former takes specific property (not money) upon paying compensation therefor, while under special assessment for local improvement no property is taken except the money belonging to the owner, and that is taken under the taxing power of the government upon the theory and fact that a corresponding benefit accrues to the party from whom such money is thus taken, by reason of the enhanced value of his property as a result of the improvement.

[3, 4] Does it appear that the assessments complained of by the appellees, who were plaintiffs below, were levied without reference to any special benefits to accrue to them by the widening and straightening of Masten street, and without any provision in the law authorizing such assessment for a hearing on the question of benefits, and without an opportunity afforded the appellees to contest the question of benefits? These questions, we think, should be answered in the negative. The charter of the city of Dallas provides that its board of commissioners shall have power to appropriate private property for public purposes whenever such board shall deem it necessary in order to open, change or widen any public street by making just compensation to the owner thereof. It provides that in the event the amount of such compensation shall not be agreed upon, the judge of the county court of Dallas county at law, upon application, shall appoint three disinterested freeholders and qualified voters of the county of Dallas, as special commissioners to assess the damages to accrue to the owners by reason of such condemnation; that in case of condemnation of land for the opening, extending, or widening of any street, the board of commissioners may, by ordi-

nance, provide that the cost of such property shall be paid for by the property owners owning property in the immediate vicinity thereof, and benefited thereby; that in such cases, the city engineer shall, under the direction of the special commissioners appointed, make a plat of the property, which in the judgment of the special commissioners, will be specially benefited and enhanced in value by the making of such improvements, whereupon the special commissioners shall issue notice to the owners of such property to appear before them at a time and place to be designated in such notices to show cause, if any they may have, why such property should not be assessed to pay the cost of the property so condemned, etc. That the charter of the city of Dallas so provides, and that such provisions were complied with in this case is undisputed. The sworn petition of the appellees alleges, in effect, that the special commissioners appointed by the judge of the county court of Dallas county at law, issued citations, which were duly served, commanding them to appear before said special commissioners, at a hearing to be had at the time and place in said citations stated, for the purpose of determining the amount of damages to be given each of them for the lands to be condemned and to assess benefits to accrue by reason of the widening and straightening of Masten street; that appellees appeared and answered the citations served upon them, and the demands of the said special commissioners, setting forth their objections thereto; that, on said hearing before said special commissioners, appellees, in support of their several objections to the condemnation of their respective parcels of land and contest of the question of benefits to accrue by reason of the contemplated improvement and the right of the special commissioners to make assessments against their property for such supposed benefits, as set forth in their pleadings, offered evidence in support thereof without avail. These allegations not only show that the appellees were given an opportunity to contest the right of the appellants to condemn their land for public use, as contemplated by the proceedings instituted, and assert and show the amount of damages that would be sustained if condemned, and to contest the right of the appellants to assess the cost of widening and straightening Masten street against the property in the immediate vicinity of said street, but show that appellees availed themselves of such opportunity. They failed, it is true, in the controversy waged before the special commissioners, but the fact remains that they were afforded an opportunity to be heard and that after full hearing, upon pleadings and proof, the award of damages for the lands to be taken and the assessments for benefits to accrue by reason of the proposed improvements were made. That the provisions of the charter, regularly enacted by the Legislature of the state, authorizing the appointment by the judge of the county court of Dallas county at law special commissioners to hear and determine the amount of damages to accrue to the owners of the lands to be condemned, and to ascertain and fix the assessments which should be levied against the property of appellees and other property in the immediate vicinity of Masten street to defray the expense of improving the same, provided such assessment does not exceed the special benefits to the property, are constitutional, is clearly affirmed by the authorities. The charter provides, as has been seen, that the condemnation proceedings shall be governed by the statute relating to the condemnation of property for railroad rights of way, "unless otherwise provided herein." The statute here referred to provides only for the condemnation of property by railroads under the power of eminent domain, and makes no provision as to a special assessment against property benefited by their improvements for the purpose of paying for the property taken or damaged. The charter of the city of Dallas provides for both, and the appointment of the special commissioners to hear and determine the amount of compensation each property owner should receive for his property taken or damaged under the condemnation proceedings authorized, and the special assessment that should be made to cover the cost of the local improvement contemplated, is an authorized departure from the statute prescribing the procedure in condemnation of property by railroads, under the language of the charter "unless otherwise provided herein." Bauman v. Ross, supra. In the view we take of the record and the law applicable to the questions raised, we are not prepared to say that the charter of the city of Dallas allows the taking of private property for public use without adequate compensation therefor, nor that it authorizes the taking of property without giving the owner thereof a hearing or trial before a legally constituted tribunal for fairly ascertaining the adequate compensation which the owner of the property should receive, nor that it wrongfully or illegally provides that the compensation due to the owner of private property taken for public use may be observed in whole or in part by offsetting against it a portion or all of the cost of acquiring such property, etc., nor do we think said charter wrongfully provides for imposing upon property owners, by way of assessments for supposed local benefits, the total cost of all property condemned for street widening purposes, without requiring that the assessment imposed upon any particular property shall not exceed the peculiar benefits to that property. If correct in the foregoing views, the present case is dissimilar to the cases of Norwood v. Baker and Hutcheson v. Storrie, supra, and not controlled by the principles announced therein.

[5, 6] The contention of appellees to the effect that the assessments imposed upon their property will subject it to a tax in excess of the constitutional limit, and that the assessment levied by the city ordinance is premature because the final condemnation of the property had not then been consummated and the amount required for the improvement of Masten street had not been ascertained, is not tenable. It is well settled that the constitutional provisions having reference to taxes for general revenue do not embrace and are not applicable to assessments for local improvements. Roundtree v. Galveston, 42 Tex. 612; Taylor v. Boyd, 63 Tex. 533. It is likewise well settled that a city may make special assessments for a public improvement before the compensation to be paid for private property to be taken or damaged is ascertained. Austin v. Nalle, 102 Tex. 536, 120 S. W. 996; Nalle v. City of Austin, 103 S. W. 825; Village of Hyde Park v. Borden et al., 94 Ill. 26; Holmes v. Village of Hyde Park, 121 Ill. 128, 13 N. E. 540. Many other cases might be cited but we deem it unnecessary. The general rule as laid down in 28 Cyc. 1108 is that, "where a street is to be opened and improved, an assessment will not be void, because levied before title to the soil over which it runs has been acquired."

[7] Nor do we think the charter provisions with respect to the condemnation of private property for public use, and the levy of assessments to pay the cost of acquiring the property not to exceed the special benefits which will accrue to the owner as a result of the local improvement, unconstitutional or invalid, because the determination of the amount of damages to be awarded to the taking or damaging of his property and the amount of such assessment is made conclusive without appeal or a trial by jury. Buffalo Bayou, Brazos & Colorado Ry. Co. v. Ferris, 26 Tex. 588; Railway Co. v. Daudat, 18 Tex. Civ. App. 595, 45 S. W. 939; City of Paris v. Brenneman, 59 Tex. Civ. App. 464, 126 S. W. 58; Bauman v. Ross, supra. In Railway Co. v. Ferris, supra, it is held that while the Legislature cannot take private property without adequate compensation being made yet the Constitution does not prescribe a rule for determining what constitutes adequate compensation, and that it may be done in any manner that the Legislature in its discretion may prescribe, if the means prescribed are effectual for fairly ascertaining the adequate compensation which the owner of the property should receive; that the constitutional provision, that "the right of trial by jury shall remain inviolate does not apply to the case of taking private property for public use, but to suits in courts of justice"; that "a charter providing that the compensation shall be ascertained by commissioners appointed by the district court, instead of by the findings of a jury, is not in violation of the Constitution." With respect to assessments for public improvements, the rule is that, since such assessments are regarded as a species of taxation, property owners are not entitled to have the assessment made by a jury. 24 Cyc. 133, and cases cited in note.

[8, 9] But appellees insist that for other reasons the judgment of the district court granting the temporary injunction in this case should be affirmed. The first of these reasons in the order presented in the brief, is, in substance, that the appellants have assessed the homesteads of many of the appellees and propose to sell them to pay the assessments; that their homesteads are not subject to the special assessments levied against them, and therefore such assessments are absolutely void. This position of the appellants is correct. The proof for the injunction prayed for and granted, as pointed out, shows that the assessed properties include the residence homesteads of a number of married men, parties to this suit, whose families, at the time the assessments were made, resided with them upon such homesteads, and the applicable law is that the constitution exempts homesteads from forced sale for the payment of assessments for local city improvements. Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770. This appellants concede, but assert that the pleas setting up the homestead character of their property were not a statement of the facts showing that such was the character of the property, but were mere statements of the conclusion of the pleader and insufficient to raise that issue. In this view of the pleadings we do not concur. The allegations of the facts necessary to show the property asserted to be homestead property were not as full as they might have been, but sufficient, especially in the absence of a special demurrer attacking their sufficiency. The record further shows that the assessment against the property of W. A. Childress and Mary Childress is against not only their homestead, but that such property is the separate property of the wife, Mary Childress, and appellees contend that this being true, no lien can be established upon the property and no personal liability against the owner, Mrs. Childress, can be established for such assessment. This contention is well taken. That a personal liability cannot be imposed against a married woman for an assessment of benefits on the homestead, owned in her separate property right, is affirmed in Eubank v. City of Ft. Worth, 173 S. W. 1003.

[10, 11] The next proposition of the appellees is that no effort was made on behalf of the city of Dallas to agree with property owners upon the damages to result to them from the taking of their property for the widening of Masten street in advance of the commencement of condemnation proceedings, and by reason of such omission the proceed-

ings were and are irregular and without legal sanction. This, it seems, is an unsolved question by any decision directly in point and its determination, in view of the peculiar procedure prescribed by the charter of the city of Dallas for condemnation of private property for public purposes, which, in our opinion, is badly in need of amendment, is not without difficulty. The appellants contend that such an attempt to agree is not required, under the provisions of the charter of the city of Dallas, said charter not expressly making it necessary that an effort to make such agreement be made. The charter, after authorizing the taking of private property for public purposes, by making just compensation to the owner thereof, provides that, "if the amount of such compensation shall not be agreed upon, it shall be the duty of the board of commissioners to cause to be stated in writing the real estate or property sought to be taken," and then proceeds to direct that such statement be filed with the judge of the county court of Dallas county at law, whose duty it shall be to appoint special commissioners to assess the damages to accrue to the owners by reason of the condemnation proceedings provided for, and the other proceedings to be had in connection therewith. Our statute authorizing condemnation proceedings by a railway company, so far as is material to state, provides that, if the company and the owner of the land sought to be condemned "cannot agree upon the damages, it shall be the duty of such company to state in writing the real estate desired, the object for which the same is sought to be condemned," etc., and file same with the county judge, who shall appoint commissioners, etc. Referring to this statute, or one identically the same, which conferred the power of condemnation of property for street purposes, the court of appeals of Texas, in an opinion delivered by presiding Justice White in the case of Porter v. City of Abilene, 16 S. W. 107, held that it required, among other things, "that there must be an effort on the part of the city and the owner of the property sought to be condemned and taken, to agree on the amount of compensation to be allowed to said owner for said property; and that if the amount of such compensation cannot be agreed on, then, and not until then, the city council of the city shall cause to be stated in writing the real estate or property sought to be taken, the name of the owners thereof, and his residence, if known, and file the same with the county judge of the county in which said property, or part of it, is situated; that these provisions of the statute did not appear to have been complied with in the proceedings instituted in the case for the condemnation of the appellants' property, and therefore the proceedings were wholly void. In Barnes v. Chicago, R. I. & T. Ry. Co., 33 S. W. 601, which was an action by the railway company

for the purpose of condemning certain property for a right of way, the petition alleged the inability of the company to agree with the owner for the purchase of the land for the purposes set out, or for the amount of compensation as damages. The court, in its charge, submitted to the jury the issue as to whether the parties had been able to agree. On appeal, the Court of Civil Appeals held that the submission of this issue was error, because there was no evidence justifying its submission. In discussing the question the court, after stating that the testimony failed to disclose any attempt at such agreement on the part of the railway company and the owner, said:

"The plaintiff seems fully to have appreciated the necessity of alleging the inability to agree, in order to maintain this proceeding. Lewis Em. Dom. § 357. The further necessity of proof in accordance with this allegation is apparent. This proof we hold not to have been made in this instance, and the charge given was without basis in the evidence."

In the more recent case of Rabb v. La Feria Mut. Canal Co., 62 Tex. Civ. App. 24, 130 S. W. 916, it appears that Rabb in 1909, instituted suit in the district court of Cameron county against the canal company in trespass to try title and upon application secured a temporary injunction enjoining the company from trespassing upon the land claimed by Rabb. On January 8, 1910, the canal company instituted proceedings in the county court under the statute for condemnation of land for a right of way for its canal over the tract of land in controversy. Commissioners were appointed by the county judge and duly qualified. A hearing was had, at which all the parties appeared and were heard, Rabb protesting against the legal competency of the commissioners and saving his right to object to the proceedings in the proper courts. The commissioners made their award, which it seems was not satisfactory to Rabb and other defendants in that proceeding, and they filed their opposition to the report of the commissioners, and the proceeding was carried by appeal to the county court. Pending this appeal in the county court, the temporary injunction which had been granted in the district court in the suit of Rabb against the canal company, was dissolved and from such order Rabb appealed to the Court of Civil Appeals and the assignments of error challenged the validity of the condemnation proceedings on the ground, among others, that the proceedings were void by reason of the absence of the fact, which was claimed to be jurisdictional, that Rabb and the canal company "had been unable to agree on the damages." The Court of Civil Appeals in its opinion said that this fact was properly alleged in the statement filed with the county judge asking for the appointment of commissioners, and that such allegation was sufficient to authorize him to act; that under the statute, neither the county judge, upon the filing of the statement with him, nor the

commissioners, upon the hearing with regard to the damages, could inquire into the truth of the facts upon which this jurisdiction is invoked, but that this cannot be done until the hearing in the county court of the appeal from the award of the commissioners. The Court of Civil Appeals further said:

"This appeal is now pending and is yet to be heard, so that, up to the time the motion to dissolve the injunction was heard in the district court, the condemnation proceedings were, as found by the district judge, in all respects legal and regular."

The effect of the holding of the Court of Civil Appeals is that the jurisdictional question presented on the appeal could not be raised either before the county judge, upon the filing of the application for the appointment of commissioners, or before the commissioners when appointed. That such question could not be raised until the hearing in the county court of the appeal from the award of the commissioners, and that as that appeal was pending and undisposed of in the county court when the motion to dissolve in the district court was made and sustained, the finding of the district judge that the condemnation proceedings were in all respects legal and correct was binding on it and could not be reviewed.

The situation in the case at bar is different from the situation in either of the cases to which we have referred. In those cases the right of appeal from the award of the commissioners in the condemnation proceedings to the county court existed, and that court was authorized and empowered to hear and determine whether or not the essential prerequisites of the law authorizing the institution and maintenance of condemnation proceedings have been complied with. Here no appeal is given from the action of the special commissioners appointed under the provisions of the city charter, and, applying the analogy furnished in Rabb's Case, to which to have referred, the alleged failure of the city of Dallas to make effort to agree with appellees as to the amount of compensation to be paid them as damages for the taking of their land, could not be raised before and determined by the county judge upon the filing of the statement and application for the appointment of the special commissioners, nor before the special commissioners appointed. By the charter of the city of Dallas the only authority conferred on the county judge of Dallas county is the appointment of special commissioners, and the authority conferred and duty imposed on the special commissioners is to ascertain as provided by the provisions of the city charter the amount of compensation the landowner should receive as damages for the land taken from him, the special benefits, if any, that will accrue to him by the proposed local improvement, and the report of their conclusions in those matters to the board of commissioners of the city. But it occurs to us that, since the county judge, nor the spe-

cial commissioners, may not hear and determine the question of whether or not the prerequisites necessary to the institution and maintenance of condemnation proceedings under the charter of the city of Dallas have been complied with, the appellees should not be, and are not, without a forum of competent jurisdiction to hear and determine the question and their rights in the premises. That forum, we think, is the district court of the county. That court is a court of general jurisdiction and we think its equitable powers may be invoked in a case like the present one. If it cannot, then it would seem that appellees are without remedy touching a valuable right, that is the right to agree with the city of Dallas upon the amount of the compensation to be paid for lands proposed to be taken from them for public use, and thereby avoid the expense and annoyance of condemnation proceedings. The pleadings in this suit, as we understand, show that the city of Dallas alleged in substance that the amount of compensation to be paid to the appellees for the tracts of land sought to be taken "could not and cannot be agreed upon between the city of Dallas and the owners thereof." As hereinbefore shown, the application for the temporary injunction granted appellees was submitted to the court upon the sworn pleadings of the parties and the exhibits attached to the pleadings and made a part thereof. Aside from such pleadings and exhibits no testimony was offered. We do not agree with appellants that it was only necessary to allege and prove under the provisions of the city charter that the city and property owners "had not agreed" upon the compensation to be paid for the lands sought to be taken. On the contrary, we think it essential to allege and prove, when questioned, that an effort was made to secure such an agreement. It may be doubted that the pleadings and proof in this particular instance were sufficient, but the case has not been finally disposed of, and we see no good reason why the district court upon proper pleadings and proof should not hear and determine the question upon final trial of this case. Appellants argue that it is very apparent that, had an attempt been made to agree with the property owners upon the damages to result to them from the taking of their property, such attempt would have been fruitless. We do not think it so appears from the record now before us. The law certainly does not, however, require a city in condemnation proceedings like the present to undertake an impossible or fruitless task, and, if it should appear upon the final trial of this case that it would have been impossible for the city of Dallas and the property owners to have agreed upon the amount of compensation they should receive as damages for the condemnation of their property for the purposes desired by the city, it may be, since in that event they have suffered no loss or

injury by reason of the city's failure to attempt to secure such agreement, and that they are invoking in this matter the equitable powers of the court, that the court in the administration of justice and equity between the parties will be authorized to hold that such failure becomes immaterial in determining the right of the city to institute and maintain the condemnation proceedings in question. We understand that the rule, with respect to the certainty of the pleadings and proof, is not so strict where the court is called upon in the exercise of its discretion to grant a temporary restraining order, as where the court is called upon in the final trial of the cause to grant a permanent injunction. The only pleadings or proof pointed out by appellees in their brief consists of averments made in certain exhibits attached to their petition, and it has been held in this state that exhibits to a petition cannot be looked to, to supply certain essential averments to show a cause of action which have been omitted from the petition itself.

The contention of appellants that the city of Dallas, through its city attorney and assistant city attorney, wrongfully dominated and controlled the proceedings before the condemnation commissioners, and thereby deprived the property owners of their right to a hearing judicially fair and independent, is, so far as the matter is disclosed in the record, without merit. The case as we see it is clearly distinguishable from the case of the City of Paris v. Tucker, 101 Tex. 99, 104 S. W. 1046, and the other cases cited.

[12] Another reason urged by several of the appellees as a justification of the granting of the temporary injunction is that, prior to the commencement of the condemnation proceedings, they entered into an agreement with the city of Dallas, or its city attorney, to the effect that they were to give their respective tracts of land desired for the widening of Masten street free to the city of Dallas and were not to be assessed for benefits to pay for other lands so desired; that they appeared before the special commissioners at a regular hearing and it was there agreed between them and each of them, and the special commissioners and the city attorney of the city of Dallas, that said agreement should be respected and carried out; that by reason of said agreement and promises no evidence was offered by them as to the value of the lands sought to be taken from them; that notwithstanding said agreement said special commissioners levied assessments against their property largely in excess of the amount allowed as compensation for damages accruing to them by reason of the condemnation and taking of their respective lands; that by such conduct on the part of the commissioners and the city attorney they were deceived and caused to refrain from or cease to introduce evidence before said commissioners; and that under such circumstances the conclusions reported by said commissioners "were constructively fraudulent as against property owners." The question of appellees' right to the temporary injunction having been submitted to the court upon the sworn pleadings of the parties it may be assumed that the court concluded that the foregoing allegations as to the agreement made and its violation by the city were true, and if they are true, the facts embraced therein justified the granting of the temporary injunction complained of in favor of such of the appellees as are parties to said agreement.

The seventh ground presented in the brief as authorizing the injunction granted is without merit and is not sustained. For the same reason we do not sustain the eighth ground presented in the brief in justification of the granting of the injunction.

[13] The ninth ground urged in support of the trial court's action in granting the temporary injunction is that "the condemnation reports concerning tracts belonging in common to more than one owner and the assessments laid upon property belonging in common to more than one owner are not so apportioned among the several owners in common as to apprise each owner of the amount due by or to him, notwithstanding such separation is legally indispensable." The proofs for injunction summarize the complaint under this ground for injunction as follows: Said assessments are not separated and apportioned to the various owners of each piece of property in proportion to their interest in said property; it does not separate the interest of those who own life estates from those who own estates in fee; it does not separate the interest of one joint owner from the interest of another joint owner. The assessments are levied in lump sums against the whole of the piece of the property. They are not so levied that an owner may pay his pro rata part and discharge his property from liens or claims. This contention finds support in the proof for the injunction and presents, we think, as to such appellees, a good reason for its issuance. It is expressly decided in City of Paris v. Tucker, 101 Tex. 99, 104 S. W. 1046, that, "when there are several defendants to a proceeding to condemn property for public purposes, the assessment of damages and judgment should determine the rights of each defendant therein." This decision was made in a case in which it appeared that O. N. Tucker and his children were made parties defendant in condemnation proceedings, and in which the value of the land and damages were assessed at $100 as a whole, and there was no finding to show how much of this sum Tucker was individually entitled to. The money was placed in bank and the parties notified that it was there subject to their order. Tucker sent his attorney to collect the money and the bank refused to pay it to the attorney, unless he would give a receipt for all the parties. This the attorney declined to do, because he had no right to sign for

any one except O. N. Tucker. In passing upon the question raised, the Supreme Court said: "We think the award should have determined separately the amount to which each party was entitled so that each one could be paid his part." In this connection it is proper to state that it does not appear on the face of the pleadings, in the case before us, that it was impossible to award separately to each of the several owners of the land sought to be condemned the amount of damages due him.

The tenth and eleventh grounds urged by appellees in their brief to sustain the court's order granting the injunction are not believed to be sound. A statement and discussion of the grounds would unnecessarily extend this already long opinion to too great length. We shall therefore content ourselves with the bare statement, for the benefit of the district court upon a final trial of this case, that the grounds here urged furnish no good reason for the granting of the injunction prayed for in this suit.

[14] The twelfth ground offered in support of the granting of the temporary injunction is that "in so far as the ordinance levying special assessments undertakes to impose personal liability upon owners of property included in the assessment plan the ordinance is void, it not appearing that the charter of the city of Dallas justifies the imposition of any personal liability; and also wherein said ordinances assesses a personal liability against husband and wife, the property being the homestead and separate property of the wife." This contention is well taken. The ordinance of the city of Dallas levying the special assessments complained of by appellees undertakes to impose personal liability upon owners of the property upon which the assessments are levied, some of whom are married women. This we think was not authorized by the charter of the city, and, unless so authorized, the cost of the local improvement contemplated by the city of Dallas could not legally be made a personal charge against the owner of the property. This is settled by decisions of this state. City of Galveston v. Heard, 54 Tex. 420; Storrie v. Cortes, 90 Tex. 283, 38 S. W. 154, 35 L. R. A. 666; Eubanks v. City of Ft. Worth, 173 S. W. 1003. The charter will be searched in vain for a provision therein which either expressly or impliedly authorizes the city to make the cost of such an improvement a personal charge against the owners of property sought to be condemned.

The thirteenth, fourteenth, and fifteenth grounds presented by appellees in their brief to sustain the granting of the temporary injunction are not believed to be sound and are not therefore sustained.

[15] The granting of the temporary injunction in this case upon the showing made rested very largely in the sound discretion of the trial court and, if it should be conceded, which is not done, that the material allegations of the plaintiff's petition were denied under oath, we would not feel justified in holding that because thereof the court should not have granted the injunction and that we should reverse the case. Such action on our part would not be warranted unless we could say that it clearly appeared that the court abused its discretion.

The views we have expressed are based upon the condition of the record now before us, and, for the reason indicated, we affirm the judgment of the court below, granting the temporary injunction.

Affirmed.